# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2493
_____

United States of America,

*Plaintiff - Appellee*,

v.

Shannon Marie Adams,

*Defendant - Appellant*.

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 16, 2015
Filed: June 18, 2015

_____

Before COLLOTON, BEAM, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Shannon Adams of sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1), and acquitted her of knowingly permitting her minor child to engage in the production of child pornography, in violation of 18 U.S.C. § 2251(b). Adams appeals, arguing that the evidence was insufficient to support her conviction,

and that the district court[1] erred in denying her pretrial motion to dismiss the child pornography charge. We conclude that there was sufficient evidence to support the conviction, and that any error in denying the motion to dismiss was harmless. We therefore affirm the judgment.

## I.

There were credibility disputes at the trial, but for purposes of reviewing the sufficiency of the evidence, we set forth the evidence in the light most favorable to the jury's verdict. On October 31, 2011, Adams took her 16-year-old daughter, whom we will call "M," out of school and brought her to Don Ray Harris's house. Harris, a paraplegic who has used a wheelchair for over 30 years, is a veteran and has received morphine pills monthly from the Veterans Administration for 25 years. Harris regularly sold and gave away some of his pills, and Adams was one of his customers.

Before arriving at Harris's house, Adams called him several times. During one of their phone calls, Adams told Harris that M wanted to "show her tits" to him in exchange for two morphine pills. She said bluntly: "two tits; two morphine." Adams told M that Harris was dying and depressed, and that it would make him happy if M "flashed" her breasts for him.

When Adams and M arrived at Harris's house, M showed her breasts to Harris in his bedroom. Harris then instructed M to sit on his bed and remove her clothes. M complied. Harris joined M on the bed, fondled her breasts and genital area, and then performed oral sex on her.

---

[1] The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

Harris thereafter took two nude pictures of M with a Kodak camera. Harris testified that Adams retrieved the Kodak camera for him and encouraged him to take pictures of M. According to Harris, Adams said that M needed to get experience posing for pictures to prepare her to be a *Playboy* model, and Adams encouraged M to smile for the pictures as she would for *Playboy* magazine. After the pictures were taken, Harris gave Adams two morphine pills, and Adams ingested them. Adams and M then left the house.

After the incident, Harris told a female acquaintance about the nude photographs and asked if she would assist him in developing the film. The acquaintance reported the incident to police, and the police commenced an investigation. M also wrote her boyfriend a note about the incident, in which M said that Adams "was willing to use my body to feed her addiction." The boyfriend's mother gave the note to police.

Police obtained a search warrant for Harris's home and found undeveloped rolls of film and the Kodak camera used to take the photos. The film was developed, and police found two nude photographs of M. One of the photographs depicted M lying nude on her stomach. The second photograph depicted M lying nude on her back, with one knee bent to obscure her genital area. The government relied on the second photograph to support child pornography charges against Adams and Harris.

A grand jury eventually charged Harris and Adams in a three-count superseding indictment. Adams was charged with permitting her minor child to engage in the production of child pornography, in violation of 18 U.S.C. § 2251(b). Harris was charged with production of child pornography, in violation of 18 U.S.C. § 2251(a) and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Both Adams and Harris were charged with sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1). Harris pleaded guilty to possession of

child pornography, and the government agreed to dismiss the other charges against him in exchange for his cooperation in the prosecution of Adams.

Adams moved to dismiss the charge that she produced child pornography, arguing that the photograph of M did not portray sexually explicit conduct. Section 2251 criminalizes the creation of any "visual depiction" of a minor engaged in "any sexually explicit conduct." Under 18 U.S.C. § 2256(2)(A), "sexually explicit conduct" includes "lascivious exhibition of the genitals or pubic area of any person." The superseding indictment charged Adams with permitting M to engage in lascivious exhibition of her genitals and pubic area with the intent to produce a visual depiction of that conduct.

Adams argued that the photograph did not depict M's genitals or pubic area and thus could not support a conviction under § 2251(b). Apparently without viewing the photograph, the district court denied Adams's motion to dismiss, concluding that the question whether the photograph depicted a "lascivious exhibition of the genitals or the pubic area" was a question of fact that should be resolved by the jury. Adams then proceeded to trial on both charges.

At trial, Adams testified that there was no discussion about Harris giving her pills before she arrived at his house. She also denied having been in and out of the bedroom while Harris was engaging in sexual contact with M, and she claimed that she did not even know that any photographs of M were taken. M testified, however, that Adams was in and out of the bedroom during the time that she and Harris were there, and that she did not think Adams objected to what Harris was doing.

The jury found Adams guilty of sex trafficking of a minor and not guilty of production of child pornography. The district court sentenced Adams to 120 months' imprisonment and 5 years of supervised release.

II.

Adams contends that the evidence presented at trial was insufficient to support her conviction for sex trafficking. In reviewing that contention, we must view the evidence in the light most favorable to the verdict and uphold the judgment if a reasonable jury could find guilt beyond a reasonable doubt. *United States v. McMurray*, 34 F.3d 1405, 1412 (8th Cir. 1994).

Adams argues that the evidence did not establish the requisite mental state for a conviction under 18 U.S.C. § 1591(a). Section 1591 establishes criminal punishment for whoever "knowingly . . . provides . . . a person . . . knowing, or in reckless disregard of the fact, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." Adams protests that she did not knowingly bring M to Harris's house with knowledge or reckless disregard that M would be caused to engage in a sex act in exchange for morphine pills. The parties appear to assume that displaying breasts is not a "sex act" (the statute does not define the term), so they debate whether the government showed that Adams acted with knowledge or reckless disregard of the fact that M would be caused to allow Harris to touch her genitals and perform oral sex in order to procure pills for Adams. *Cf.* 18 U.S.C. § 2246(2) (defining "sexual act").

Adams denies that she asked Harris for morphine pills in exchange for M showing him her breasts. And, in any event, she claims that she did not expect Harris to do anything more than look at M's breasts. She further argues that Harris did not give her the morphine pills as payment for a sex act with M, but rather as an attempt to "purchase her silence" and calm her down because she was upset about what had occurred.

Based on the testimony of Harris and M, however, a reasonable jury could infer that Adams had the requisite knowledge. Harris testified that Adams spoke in terms

of a transaction before Adams and M arrived at his house: "two tits; two morphine." M similarly understood that her mother was going to get "something out of" M showing her breasts to Harris. As for whether Adams knew or recklessly disregarded that the exchange would involve M engaging in a sex act beyond displaying her breasts, both M and Harris testified that Adams was in and out of Harris's bedroom while Harris fondled M and performed oral sex. A jury reasonably could infer that Adams knew that a sex act would occur and allowed it to proceed in order to procure morphine pills from Harris. There was sufficient evidence to sustain the verdict.

Adams also challenges the district court's denial of her motion to dismiss the charge that she produced child pornography by permitting M to be photographed in the nude while reclining on Harris's bed. She argues that M's genitals and pubic area were not visible in the photograph, and that the district court therefore should have concluded as a matter of law before trial that the photograph did not portray a visual depiction of a minor engaged in sexually explicit conduct. Although Adams ultimately was acquitted of the production charge, she contends that the district court's ruling allowed the government to introduce the photograph at trial. She argues that the ruling prejudiced her defense on the sex trafficking charge, because the production charge injected irrelevant issues and forced her to testify in her defense to explain the photograph. She seeks a new trial on the sex trafficking charge at which the photograph would be excluded.

Assuming for the sake of analysis that the district court properly could address a challenge to sufficiency of the evidence in response to a pretrial motion, *cf. United States v. Mennuti*, 639 F.2d 107, 108-09 & n.1 (2d Cir. 1981), the district court's denial of Adams's motion did not unfairly prejudice her defense of the sex trafficking charge. The photograph of M reclining in the nude on Harris's bed was relevant to whether Adams knew that M would be caused to engage in a commercial sex act. The government's evidence was that Adams retrieved the camera used in producing the photograph and encouraged M to gain experience similar to posing for *Playboy*

magazine. That Adams participated in the photo session while M was nude on Harris's bed tends to corroborate other evidence that Adams knew about M's participation in a sex act with Harris. Any error in the district court's denial of Adams's motion to dismiss was therefore harmless.

The judgment of the district court is affirmed.

_____