FILED
United States Court of Appeals
Tenth Circuit

November 16, 2016

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ELDON L. BOISSEAU,

    Defendant - Appellant.

No. 15-3294

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 6:14-CR-10180-EFM-1)

Robin D. Fowler of Bath & Edmonds, P.A., Overland Park, Kansas, for Defendant - Appellant.

Joseph B.Syverson, Tax Division, Department of Justice (Caroline D. Ciraolo, Acting Assistant Attorney General, S. Robert Lyons, Acting Chief, Criminal Appeals & Tax Enforcement Policy Section, and Gregory Victor Davis of Tax Division, Department of Justice, and Barry R. Grissom, United States Attorney, of Counsel, with him on the brief), Washington, D.C., for Plaintiff - Appellee.

Before **KELLY**, **HARTZ**, and **MATHESON**, Circuit Judges.

**KELLY**, Circuit Judge.

    Defendant-Appellant Eldon L. Boisseau appeals from his conviction of tax evasion, following a bench trial. 26 U.S.C. § 7201; United States v. Boisseau,

116 F. Supp. 3d 1242 (D. Kan. 2015). On appeal, he challenges the sufficiency of the evidence and argues that the district court wrongly convicted him (1) without evidence of an affirmative act designed to conceal or mislead, and (2) by concluding that proof satisfying the affirmative act element of tax evasion was sufficient to prove willfulness. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

Background

Mr. Boisseau, a practicing lawyer in Wichita, was charged with tax evasion for taxes incurred between 1998 and 2008. During nine of those years, Mr. Boisseau filed returns or amended returns reporting his tax liability, but made only small payments. Thus, at the time of the filing of his 2008 tax return, he had in the aggregate reported some $712,972 of tax, but only paid $212,511. In 2001, he was also assessed a trust fund recovery penalty of $250,929 for failing to pay withholding taxes, most of which would ultimately be paid by the comptroller of his former law firm.

The district court determined that Mr. Boisseau willfully evaded paying his taxes by (1) placing his law practice in the hands of a nominee owner to prevent the Internal Revenue Service (IRS) from seizing his assets; (2) causing his law firm to pay his personal expenses directly given an impending IRS levy, rather than receiving wages; and (3) telling a government revenue officer that he was

receiving no compensation from his firm when in fact the firm was paying his personal expenses. We discuss the supporting facts as pertinent.

Discussion

A. Sufficiency of the Evidence

We view the evidence in the light most favorable to the government to determine whether a rational factfinder could have found that the elements of the offense were met beyond a reasonable doubt. See United States v. Sparks, 791 F.3d 1188, 1190–91 (10th Cir. 2015). We do not consider credibility or reweigh the evidence. Id. at 1191. If the evidence could support a rational determination of guilt beyond a reasonable doubt, the conviction will be upheld. United States v. Lepanto, 817 F.2d 1463, 1467 (10th Cir. 1987).

The statute provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by [the Internal Revenue Code] or the payment thereof shall . . . be guilty of a felony." 26 U.S.C. § 7201. To obtain a conviction, the government must prove three elements, namely the existence of a tax deficiency, an affirmative act constituting an evasion or attempted evasion of the tax, and willfulness. Sansone v. United States, 380 U.S. 343, 351 (1965). As Mr. Boisseau does not dispute that he had a substantial tax due and owing, Aplt. Br. at 5, we need only address the remaining two elements.

1. Affirmative Act

We begin with the affirmative act element. Because Congress has proscribed attempts to evade taxes "in any manner," 26 U.S.C. § 7201, the type of affirmative conduct that can constitute an affirmative act of evasion is broad. See Spies v. United States, 317 U.S. 492, 499 (1943). Recognizing this, the Supreme Court has declined to define or limit what constitutes an affirmative act, but has provided examples including maintaining a double set of books, creating false documents, destroying books or other records, concealing assets, covering up sources of income, conducting one's business in a manner that avoids usual recordkeeping, and conduct that is likely to mislead or conceal. Id. Lawful conduct can constitute an affirmative act under § 7201 when done with the intent to evade taxes, even if the conduct serves other purposes as well. See id.; United States v. Jungles, 903 F.2d 468, 474 (7th Cir. 1990). The government need only prove one affirmative act of tax evasion for each count charged. United States v. Hoskins, 654 F.3d 1086, 1091 (10th Cir. 2011) (citing United States v. Thompson, 518 F.3d 832, 852 (10th Cir. 2008)).

a.   *Law Firm Creation*

Mr. Boisseau contends that the creation of his law firm was not an affirmative act, because the firm was created with the advice of a lawyer so that Mr. Boisseau could continue to practice law. Aplt. Br. at 18. The evidence establishes that the lawyer informed Mr. Boisseau and his accountant (in a memo) that the creation of an LLC owned by Mr. Boisseau would be subject to

- 4 -

attachment by the IRS given Mr. Boisseau's tax difficulties. 4 Aplt. App. 1139. Thus, the lawyer suggested that the LLC be owned by someone else to insulate it should the government seek to collect. <u>Id.</u> And, indeed, that is what occurred. Mr. Boisseau requested that his son's father-in-law be the sole owner of the firm. The father-in-law had no daily involvement with the firm, performed no work for it, and received no salary. 1 Aplt. App. 219–20, 228. In fact, he had never been on site, and did not think it was any of his business to examine documents pertaining to the firm's operations. <u>Id.</u> 220, 238–239. The firm's office manager confirmed that Mr. Boisseau made the day-to-day operating decisions, including hiring employees, selecting cases, soliciting business, and making financial decisions. 2 Aplt. App. 384. Further, the office manager learned from Mr. Boisseau that he was not the owner due to his "personal IRS issues," which he did not want to affect the firm and its clients' accounts. <u>Id.</u> 385.

Viewed in the light most favorable to the government, the evidence is sufficient. The use of a nominee owner of one's business is a common affirmative act supporting a conviction for tax evasion. <u>See, e.g.</u>, <u>United States v. Conley</u>, 826 F.2d 551, 553–55 (7th Cir. 1987) (describing defendant who evaded paying his taxes by placing assets in the names of others to avoid seizure by the IRS); <u>United States v. Hook</u>, 781 F.2d 1166, 1168 (6th Cir. 1986) (discussing defendant's conduct in concealing his assets by forming a corporation with his wife and daughters as nominee owners); <u>Cohen v. United States</u>, 297 F.2d 760,

- 5 -

762 (9th Cir. 1962) (describing defendant who placed assets in the name of others and had others pay for his obligations to defeat the payment of his income tax liabilities). Merely because the ownership structure was created in part to further legitimate ends does not override the evidence suggesting that Mr. Boisseau created the entity to frustrate the government's lawful collection efforts. Conduct that serves a purpose other than tax evasion can still constitute a willful attempt to defeat or evade taxes where the tax-evasion motive is present. See Spies, 317 U.S. at 499. And, as noted above, this is true even of lawful conduct, such as the use of a nominee, if done with the intent to evade taxes. Cf. Jungles, 903 F.2d at 474.

### b. Alteration of Compensation

Mr. Boisseau argues that switching his compensation from payment of a salary to payment of his personal expenses after an IRS bank levy was not an affirmative act of avoidance or concealment. He suggests that the timing of events, the ostensibly confusing nature of his resignation letter, his tax reporting, and his disclosures to the IRS contradict the district court's contrary view.

The evidence is plainly sufficient. The lawyer that set up the law firm explained that the IRS could attach any salary or bonus paid to Mr. Boisseau, and stressed the importance of tying down the compensation arrangements in writing, otherwise the IRS could claim it was entitled to everything. 4 Aplt. App. 1148. Beginning in January 2006, the firm paid Mr. Boisseau's salary by direct deposit

into his checking account. But after an IRS levy was placed on his account, Mr. Boisseau drafted a letter indicating that he was resigning from the firm and wanted to terminate his pay agreement. 2 Aplt. App. 393–94; 4 Aplt. App. 1084. And so he did, while continuing to work on cases. 2 Aplt. App. 394. The revenue officer served a wage levy on the firm, and the firm said it had no wages to turn over. But the law firm continued to compensate Mr. Boisseau at his direction by paying his personal expenses. Id. 396–431. Before the levy on his personal checking account, the firm did not regularly pay these expenses, nor did it compensate other employees in this manner. Id. at 430–31. Although Mr. Boisseau received four paychecks after his resignation and alteration of compensation, their receipt was timed to when Mr. Boisseau proposed an installment agreement with the IRS, and the IRS rejected it, and immediately prior to Mr. Boisseau's filing for bankruptcy. 5 Aplt. App. 1334–37, 1420, 1440, 1447–53. Because these events halted the IRS's collection efforts, the district court found the timing of Mr. Boisseau's receipt of these paychecks indicated that his proposed installment plan was not made in good faith. Boisseau, 116 F. Supp. 3d at 1250–51.

Essentially, Mr. Boisseau is asking this court to review the evidence in the light most favorable to him, but that is not the correct standard. The trial judge heard and saw the evidence and made the perfectly reasonable finding that the purpose of changing the compensation method was to avoid the levy.

### c. *Misrepresentation to the IRS*

When Mr. Boisseau appeared before the revenue officer, she asked him how he was paying his personal expenses given his resignation in response to the levy. According to the revenue officer, Mr. Boisseau indicated that his children and other family members paid them, and that he received no compensation from the firm. 2 Aplt. App. 345–46. Mr. Boisseau argues that any omission in his statements (which he does not concede) could not constitute an affirmative act of avoidance or concealment for two main reasons. First, the statements were corrected when his lawyer informed the IRS that the firm had been paying his personal expenses. Second, Mr. Boisseau claimed these payments as Schedule C income when he filed his taxes. Plainly, it was up to the trier of fact to judge the credibility of the witnesses and what weight to give Mr. Boisseau's explanations. Suffice it to say that a rational trier of fact could conclude that the statements were not accurate and constituted an affirmative act to evade.

### 2. Willfulness

Next we turn to whether the government proved beyond a reasonable doubt that Mr. Boisseau's conduct was willful. Under § 7201, willfulness is the "voluntary, intentional violation of a known legal duty." Cheek v. United States, 498 U.S. 192, 201 (1991). Typically, willfulness is established based on circumstantial evidence or inferences arising from a defendant's conduct. See United States v. Melot, 732 F.3d 1234, 1240–41 (10th Cir. 2013). It is "closely

connected" to the affirmative act element. United States v. Romano, 938 F.2d 1569, 1572 (2d Cir. 1991). Indeed, "[e]vidence of affirmative acts may be used to show willfulness, and the defendant must commit the affirmative acts willfully to be convicted of tax evasion." Id.

We conclude that a reasonable factfinder could determine that the government proved willfulness beyond a reasonable doubt. The evidence demonstrates that Mr. Boisseau was aware of his legal obligation to pay taxes and his substantial tax liabilities, a conclusion buttressed by the fact that Mr. Boisseau was an experienced attorney. See Conley, 826 F.2d at 556; see also United States v. Guidry, 199 F.3d 1150, 1157–58 (10th Cir. 1999) (defendant's business degree and accounting experience supported willfulness). Moreover, a reasonable factfinder could conclude that Mr. Boisseau's conduct over time demonstrated his intent to avoid collection, whether it be creating the law firm in the name of a nominee due to his personal tax issues, altering the method of compensation to defeat a levy, or misstating the true facts about his compensation to the revenue officer. These facts speak to his specific intent to evade, thereby demonstrating that his conduct was willful. Cf. United States v. Vernon, 814 F.3d 1091, 1099–101 (10th Cir. 2016) (discussing how the use of a sham corporation to conduct business and pay personal expenses supported the defendant's willfulness); United States v. Daniel, 956 F.2d 540, 542–43 (6th Cir. 1992) (finding defendant's use of others' credit cards for personal expenses and of

family members as nominees to execute transactions was proof of willfulness). Indeed, the statements of Mr. Boisseau and those who served him at his direction reasonably support a determination that he voluntarily, intentionally, and repeatedly violated a known legal duty.

We have considered Mr. Boisseau's other arguments regarding the sufficiency of the evidence, but find them to be without merit. Because a rational factfinder could conclude that the government proved all three elements of tax evasion under § 7201 beyond a reasonable doubt, the evidence was sufficient.

B.    Legal Standards

Mr. Boisseau also argues that his conviction was the product of two legal errors. He argues that proof of an affirmative act of tax evasion cannot be established without evidence that the act was designed to conceal or mislead, and that proof satisfying the affirmative act element is not sufficient, in and of itself, to prove the willfulness element.

Regarding his first challenge, Mr. Boisseau relies upon United States v. Meek, in which we stated, "An affirmative act requires more than the passive failure to file a tax return; rather, it requires a positive act of commission designed to mislead or conceal." 998 F.2d 776, 779 (10th Cir. 1993). In light of this precedent, Mr. Boisseau contends that the district court erred in stating that the government did not need to prove that he misled or concealed assets from the IRS. See Boisseau, 116 F. Supp. 3d at 1257. The government argues, inter alia,

that the district court properly recognized the Supreme Court's recent decision in Kawashima v. Holder demonstrates that "the elements of tax evasion pursuant to § 7201 do not necessarily involve fraud or deceit" and that "it is possible to willfully evade or defeat payment of a tax under § 7201 without making any misrepresentation." 132 S. Ct. 1166, 1175 (2012). Mr. Boisseau asserts that this language in Kawashima is dicta and does not overturn this court's decision in Meek requiring a positive act designed to mislead or conceal.

We need not resolve this issue, however, because Mr. Boisseau lacks the factual predicate to make it given the district court's evaluation of the evidence. The district court addressed Mr. Boisseau's contention that the affirmative acts must mislead or conceal, and clearly stated that "[Mr.] Boisseau did mislead or conceal." Boisseau, 116 F. Supp. 3d at 1257. It found that Mr. Boisseau's conduct in using a nominee, altering his compensation, and misrepresenting his compensation to the IRS was not only intentional but also inherently misleading. Id. In light of its findings, there was simply no need to expressly state that Mr. Boisseau's conduct was "designed to conceal or mislead."

As to Mr. Boisseau's second argument, he asserts that because the willfulness and affirmative act elements are distinct, the district court erred in relying on the Second Circuit's decision in United States v. Romano to conclude "if the affirmative act element is satisfied, there is no question that willfulness is also present." Boisseau, 116 F. Supp. 3d at 1256 (quoting Romano, 938 F.2d at

- 11 -

1572). The government responds that this argument was not preserved, and that the district court clearly stated that the elements were separate, defined willfulness in accordance with Supreme Court precedent to mean "the voluntary, intentional violation of a known legal duty," Cheek, 498 U.S. at 201, and found that each component of that definition was satisfied here.

Regardless of whether the error was preserved, and having considered each of Mr. Boisseau's contentions, we conclude the government has the better argument. The district court's opinion, taken as a whole, demonstrates that the court treated the affirmative act element and the willfulness element as distinct. It defined the elements separately, and separately discussed which facts in the record proved each element beyond a reasonable doubt. Thus, the error, if any there be, was harmless because the district court simply did not conflate the affirmative act and willfulness elements of § 7201.

AFFIRMED.