FILED
United States Court of Appeals
Tenth Circuit

February 26, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TIMOTHY J. STUBBS,

    Defendant - Appellant.

No. 17-1373
(D.C. No. 1:13-CR-00439-CMA-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT***

_____

Before **BRISCOE**, **MORITZ**, and **EID**, Circuit Judges.

_____

After a jury convicted Timothy John Stubbs of two counts of tax evasion in

violation of 26 U.S.C. § 7201 and six counts of failure to file personal and corporate

income tax returns in violation of 26 U.S.C. § 7203, the district court sentenced him

to 88 months' imprisonment. Through counsel, Stubbs now appeals from both his

convictions and his sentences. Exercising jurisdiction under 28 U.S.C. § 1291 and

18 U.S.C. § 3742(a), we affirm.

---

* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## BACKGROUND

Stubbs was the owner and sole shareholder of National Rebate Fund, Inc., also known as National Energy Rebate Fund, Inc. (NRF). NRF sold businesses such as home-improvement companies the opportunity to offer rebates to their customers. Say, for example, a window company proposed to sell a homeowner new windows for $10,000. That company could sweeten the deal by offering the homeowner the chance to file for a rebate of, say, 50% of the purchase. The company would pay NRF a fee plus 15% of the rebate amount (in this example, the potential rebate would be $5,000, and so the company would pay NRF the fee plus $750) and give its customer, the homeowner, the rebate forms. It would be the homeowner's responsibility to file for the rebate.

NRF's profit allegedly came from the "slippage" between the total number of customers eligible for rebates and the much smaller number who successfully completed the requirements. The rebate opportunity carried extremely stringent rules: customers had to register the rebate within 17 days of receiving the form; they had to send forms by registered mail only; they had to claim the rebate within the 30 days after the 47th month from the purchase; and the rebate offer would be invalid if anyone other than NRF, such as the company from which they got the rebate forms, reminded them about the deadlines. NRF set aside only a small portion of the revenues it received to pay rebates. And although the rebate program ostensibly was administered by an independent third party, that administration company actually was connected to Stubbs. Apparently, some customers received rebates, but numerous

2

customers who failed to strictly satisfy each and every condition were denied rebates. NRF and its activities were the subject of civil lawsuits brought by Wisconsin and Colorado on behalf of their citizens, which resulted in multi-million-dollar default judgments against Stubbs.

Stubbs elected for NRF to be an S corporation. As an S corporation, NRF still had to file a tax return, but it did not itself pay tax. Instead, its shareholders (e.g., Stubbs) were responsible for paying tax on NRF's income. For tax years 2005, 2006, and 2007, NRF earned a total of approximately $7 million in gross revenue, with a net income of nearly $1.8 million. Stubbs' total individual income was approximately $2.1 million, upon which a total of $639,114 in taxes were due. But neither NRF nor Stubbs filed tax returns for those years. Nor did Stubbs pay any income tax for those years. In fact, Stubbs had neither filed income tax returns nor paid income tax since 1993.

Stubbs represented himself at trial. He did not contest that he failed to file tax returns and pay income tax for 2005, 2006, and 2007. Instead, he raised a good-faith defense. He testified that in 1993, it was brought to his attention that the Fourteenth Amendment was not properly ratified, that he was not actually a United States citizen, that the IRS is not an agency of the United States government, and that the Federal Reserve is not part of the United States government but is a privately held bank. He researched on the Internet and began reading books such as Irwin Schiff's *How Anyone Can Stop Paying Income Taxes*. "And the culmination of that has been that to this very moment, until the day I die, I understand that I am not a person [as

3

defined by the Internal Revenue Code], but that I am a man, and I am not subject to this jurisdiction that they are claiming over me[.]" R., Vol. 8 at 300. He described his avenues of research and his communications with the IRS, and concluded, "it's just my heartfelt belief that I have not done anything wrong; that I am not a person required to file. . . . And that is just where I am coming from, and that has been my belief." *Id.* at 306.

On cross-examination, the prosecutor brought up tax returns for 2002 and 2003 that Stubbs had prepared and submitted to Bank of America in support of an application for a mortgage loan—tax returns that Stubbs had never filed, but that reflected income and inaccurately stated that Stubbs had paid taxes on that income. She asked Stubbs why he submitted those returns to the bank if he did not believe he had a duty to file. Stubbs asserted his Fifth Amendment privilege against compelled self-incrimination. The district court initially upheld the privilege. After a sidebar conference and a short recess, however, the district court held that by testifying on direct examination about his good-faith beliefs, Stubbs had waived his Fifth Amendment privilege as to any questions that related to impeaching those beliefs. Stubbs then answered the prosecution's questions, reiterating that he believed he was not required to pay income tax. He further conceded that he did not avail himself of many readily available resources that would have undermined or contradicted his beliefs. For example, he did not consult the IRS website, did not learn that Schiff had been convicted of income tax evasion three times, did not search for information

4

that would discredit his interpretations, and did not speak to any licensed attorney or accountant about his beliefs.

The jury found Stubbs guilty of tax evasion for tax years 2006 (Count 1) and 2007 (Count 2). It further found Stubbs guilty of failing to file corporate tax returns for tax years 2005, 2006, and 2007 (Counts 3, 4, and 5) and failing to file personal income tax returns for those same tax years (Counts 6, 7, and 8).

The district court allowed Stubbs to remain free on conditions pending sentencing. Two weeks before his scheduled sentencing hearing, he fled to Costa Rica, where he had resided before being indicted in this case. Some sixteen months later, he was deported from Costa Rica, arrested, and returned for sentencing.

Stubbs' base offense level was 20. The district court increased the offense level by 6 levels: 2 levels under United States Sentencing Guideline (USSG) § 2T1.1(b)(1) for failing to report income exceeding $10,000 derived from criminal activity; 2 levels under USSG § 2T1.1(b)(2) for using sophisticated means; and another 2 levels under USSG § 3C1.1 for obstruction of justice for fleeing. The resulting offense level of 26, combined with Stubbs' criminal history level of I, yielded an advisory Guidelines range of 63 to 78 months. The district court upwardly varied and sentenced Stubbs to a total of 88 months' imprisonment: 60 months' imprisonment on Count 1; 16 months' imprisonment on Count 2, to be served consecutively to the sentence in Count 1; and 12 months' imprisonment on each of Counts 3 through 8, to be served concurrently to each other and consecutively to the other terms of imprisonment.

5

## DISCUSSION

On appeal, Stubbs asserts (1) the evidence was insufficient to support his tax-evasion convictions; and (2) it was plain error to admit certain evidence under Fed. R. Evid. 404(b).[1]  Regarding his sentences, he asserts that the district court should not have applied Guideline increases for failing to report income exceeding $10,000 from criminal activity and for using sophisticated means.

## I.    The evidence is sufficient to support the tax-evasion convictions.

Stubbs first argues that the district court erred in denying his Fed. R. Crim. P. 29 motion for acquittal on the two tax-evasion counts.  "To prove evasion under § 7201, the government must show (1) a substantial tax liability, (2) willfulness, and (3) an affirmative act constituting evasion or attempted evasion." *United States v. Hoskins*, 654 F.3d 1086, 1090 (10th Cir. 2011) (internal quotation marks omitted).  Stubbs' opening and reply briefs argue that the evidence failed to establish the third element, an affirmative act.  His reply brief further argues that the evidence failed to establish the second element, willfulness.[2]  Because he does not challenge the

---

[1] Stubbs' opening brief also argues that the district court erred in failing to give a lesser-included-offense misdemeanor instruction with regard to his failure-to-file convictions.  But as the government responds, § 7203 *is* a misdemeanor offense, except in circumstances not applicable here.  Stubbs' reply brief appropriately concedes there was no error.

[2] The opening brief only briefly mentions willfulness and fails to make any reasoned argument regarding that element.  Nevertheless, even though we generally do not consider arguments raised for the first time in a reply brief, we have decided to do so here.  The government briefed willfulness as well as affirmative acts.  In addition, willfulness is "closely connected to the affirmative act element," *United States v. Boisseau*, 841 F.3d 1122, 1127 (10th Cir. 2016) (internal quotation marks

6

existence of a substantial tax liability, we need not address that element. *United States v. Boisseau*, 841 F.3d 1122, 1125 (10th Cir. 2016).

Generally, we review sufficiency of the evidence de novo. *Hoskins*, 654 F.3d at 1090. The government argues that Stubbs moved for acquittal based only on willfulness, not on affirmative acts, and therefore his affirmative-acts argument should be reviewed only for plain error. *See United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007). We need not parse the standard of review that finely here, however, given that the government prevails under either standard.

"Evidence is sufficient to support a conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government." *United States v. Thompson*, 518 F.3d 832, 849 (10th Cir. 2008) (internal quotation marks omitted). "We will not weigh conflicting evidence or second-guess the fact-finding decisions of the district court." *Hoskins*, 654 F.3d at 1090 (brackets and internal quotation marks omitted).

## A. Willfulness

"To prove the element of willfulness, the Government was required to show [the defendant] intentionally failed to report income and pay taxes he knew the law required him to report and pay." *United States v. Melot*, 732 F.3d 1234, 1241 (10th Cir. 2013). At trial, Stubbs asserted that his conduct was not willful because he

---

omitted), which Stubbs' opening brief squarely challenged, and it is relevant also to his Fed. R. Evid. 404(b) argument.

had a good-faith belief that he was not violating the law. *See Cheek v. United States*, 498 U.S. 192, 202 (1991) (stating that carrying the government's burden "requires negating a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws").

"The Government can meet its burden of proving actual knowledge without presenting direct evidence of [the defendant's] state of mind. That is, a jury can infer willfulness from a defendant's conduct." *Melot*, 732 F.3d at 1241 (citation omitted). "Willfulness may be inferred from 'concealment of assets or covering up sources of information, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or conceal.'" *United States v. Kaatz*, 705 F.2d 1237, 1246 (10th Cir. 1983) (quoting *Spies v. United States*, 317 U.S. 492, 499 (1943)); *see also Cheek*, 498 U.S. at 202 (holding that "the jury would be free to consider any admissible evidence from any source showing that [the defendant] was aware of his duty to file a return and to treat wages as income").

Viewing the evidence in the light most favorable to the government, testimony at trial established, at a minimum, that Stubbs covered up sources of information and handled his and NRF's affairs to avoid making the usual records. Stubbs received checks from NRF designated as independent-contractor payments, but NRF did not issue Stubbs 1099 or W-2 forms even though it did issue such forms to other employees. Likewise, NRF withheld taxes from salaries and turned over those

8

withholdings to the IRS for other employees, but not for Stubbs. Also, NRF paid hundreds of thousands of dollars for Stubbs' personal expenses, including mortgages on his personal properties and the purchase of thousands of dollars in gold and silver, without acknowledging those payments as compensation to him rather than legitimate business expenses. And a customer company, Kool View, who paid approximately $468,000 for NRF rebate opportunities, repeatedly requested NRF's Tax Identification Number (TIN). Stubbs responded that "[y]ou do not need a TIN on our company, nor to report amounts paid to us as 'income.' The premiums collected by us are not our income and it is not proper to report it as such." R., Vol. 8 at 62. The jury was entitled to view that response as evidence that Stubbs sought to avoid having Kool View report its payments to NRF to the IRS.

The evidence, again viewed in the light most favorable to the government, also showed that Stubbs was aware of his duty to file returns. He had filed returns and paid taxes through the 1992 tax year, and he helped his office bookkeeper complete her personal tax returns for tax years subject to the indictment. When asked about filing NRF's tax returns in a deposition in a civil suit in Wisconsin in April 2008 (just before the deadline for tax year 2007), he stated that he was behind on that, not that there was no duty to file. Moreover, when seeking a mortgage loan from Bank of America, he submitted copies of income tax returns (which he never filed with the IRS) acknowledging income and stating (inaccurately) that tax was paid.

In addition, while Stubbs testified about his years of study regarding the duty to pay taxes, he acknowledged that his beliefs came primarily from Internet sources

9

who profited from promoting tax-protestor rhetoric, and that he did not consult readily available sources of information that would discredit those beliefs.[3] The jury was entitled to view that course of conduct as unreasonable. "[T]he more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge." *Cheek*, 498 U.S. at 203-04.

For these reasons, the evidence is sufficient to support the willfulness element.

## B.     Affirmative Acts

"To be liable under § 7201, a defendant must do more than passively fail to file a tax return[.]" *Hoskins*, 654 F.3d at 1091. The government must also prove "an affirmative act constituting evasion or attempted evasion." *Id.* at 1090 (internal quotation marks omitted).[4] "Because Congress has proscribed attempts to evade

---

[3] One such source was this court's precedent: long before the tax years at issue in this case, and even before Stubbs stopped filing returns and paying income tax in 1993, this court had rejected as legally frivolous numerous arguments that are the same as or similar to the beliefs about which Stubbs testified. *See United States v. Collins*, 920 F.2d 619, 629 (10th Cir. 1990); *Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir. 1990).

[4] *Hoskins* states that "the statute also requires a positive act of commission designed to mislead or conceal." 654 F.3d at 1091 (internal quotation marks omitted). Since *Hoskins*, the Supreme Court has stated "the elements of tax evasion pursuant to § 7201 do not *necessarily* involve fraud or deceit." *Kawashima v. Holder*, 565 U.S. 478, 488 (2012). We have not yet decided how *Kawashima* affects our precedent. *See Boisseau*, 841 F.3d at 1128. The parties do not argue this aspect of the affirmative-act element, however, and we need not discuss it further. When viewed in the light most favorable to the government, the affirmative acts found by the jury evidence a design by Stubbs to mislead or conceal.

taxes 'in any manner,' 26 U.S.C. § 7201, the type of affirmative conduct that can constitute an affirmative act of evasion is broad." *Boisseau*, 841 F.3d at 1125. "Lawful conduct can constitute an affirmative act under § 7201 when done with the intent to evade taxes, even if the conduct serves other purposes as well." *Id.* The government need prove only one affirmative act for each count of tax evasion. *Thompson*, 518 F.3d at 852.

With regard to Count 1, the jury found that Stubbs committed two affirmative acts of evasion: (1) "[i]ssuing and causing to be issued payments to third parties for personal expenses from bank accounts he controlled which were held under the names of businesses," and (2) "[f]alsely instructing a vendor that payments to defendant's business National Rebate Fund, Inc. were not income and did not need to be reported to the IRS, in response to a vendor's request for his Tax Identification Number (TIN)." R., Vol. 2 at 80. With regard to Count 2, the jury also found that Stubbs committed two affirmative acts of evasion: (1) "[i]ssuing and causing to be issued payments to third parties for personal expenses from bank accounts he controlled which were held under the names of businesses," and (2) "[p]urchasing coins and other metals, on at least three separate occasions, with a total cost of more than $370,000 to conceal and disguise his unreported income and his ownership and control of said assets." *Id.* at 81.

Stubbs' assertion that these affirmative acts were insufficient relies on his own interpretation of the evidence. "Essentially, [Stubbs] is asking this court to review the evidence in the light most favorable to him, but that is not the correct standard."

11

*Boisseau*, 841 F.3d at 1127. When viewed in the light most favorable to the government, the evidence is sufficient to support the affirmative-acts element.

## II. The district court did not plainly err in admitting evidence of prior acts.

Stubbs next asserts that the district court improperly admitted evidence of certain prior acts under Fed. R. Evid. 404(b). He concedes that he did not object to this evidence at trial.[5] Therefore, this argument is reviewed only for plain error. *United States v. Battles*, 745 F.3d 436, 452 (10th Cir. 2014). To establish plain error, Stubbs must show (1) error, (2) that is plain, (3) that affects his substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Archuleta*, 865 F.3d 1280, 1290 (10th Cir. 2017).

Under Rule 404(b), evidence of "a crime, wrong, or other act" is inadmissible to prove the character of the accused, but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1), (2). This court has established a four-part test for evaluating the admission of Rule 404(b) evidence:

> (1) evidence of other crimes, wrongs, or acts must be introduced for a proper purpose; (2) the evidence must be relevant; (3) the court must make a Rule 403 determination whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) the

---

[5] Stubbs' opening brief argues that while he did not object at trial, his then-counsel filed a motion in limine before trial, which the district court never ruled on. But as the government points out, the motion addressed only evidence regarding the civil proceedings against Stubbs in Wisconsin and Colorado, not the prior-acts evidence about which Stubbs now complains. Accordingly, Stubbs never asserted any kind of objection regarding the prior-acts evidence he targets on appeal.

> court, upon request, must instruct the jury that the evidence of similar acts is to be considered only for the limited purpose for which it was admitted.

*United States v. Farr*, 701 F.3d 1274, 1280 (10th Cir. 2012) (internal quotation marks omitted). Whether to admit Rule 404(b) evidence is a matter within the court's discretion. *See id.*

Stubbs challenges the admission of (1) the unfiled tax returns he prepared and presented to Bank of America as part of his mortgage loan application and (2) testimony about his history of not filing tax returns and paying taxes in years other than those for which he was indicted. He asserts that "[n]one of this evidence had any bearing on the charges as set forth in the Indictment for tax years 2005, 2006, and 2007." Opening Br. at 31. As discussed above, however, willfulness is an element of tax evasion, and Stubbs invoked a good-faith defense. The disputed evidence was relevant to these issues and introduced for a proper purpose. Further, the district court instructed the jury to consider such evidence only to the extent it bore upon willfulness, intent, knowledge, and absence of mistake or accident.

Stubbs further asserts that he, an unwary pro se litigant, suffered prejudice before the jury by being lured into a trap when he invoked his Fifth Amendment privilege not to answer questions about the unfiled tax returns, only to have the district court hold that the privilege was waived. But we see no plain error. The government had notified the court and defense of its intent to introduce the evidence, and the district court cautioned Stubbs before he chose to testify that offering himself as a witness may affect his ability to invoke his Fifth Amendment privilege.

13

For these reasons, Stubbs has failed to show any plain error with regard to the admission of Rule 404(b) evidence.

## III. The district court did not err in applying the criminal-activity and sophisticated-means enhancements.

"In reviewing a district court's calculation of a defendant's advisory Guidelines range, this court reviews legal questions de novo and factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Stegman*, 873 F.3d 1215, 1235-36 (10th Cir. 2017). "A finding of fact is clearly erroneous only if it is without factual support in the record or if the appellate court, after reviewing all of the evidence, is left with a definite and firm conviction that a mistake has been made." *United States v. Maestas*, 642 F.3d 1315, 1319 (10th Cir. 2011) (internal quotation marks omitted).

### A. Criminal Activity

USSG § 2T1.1(b)(1) provides for a two-level enhancement "[i]f the defendant failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity." U.S. Sentencing Guidelines Manual § 2T1.1(b)(1) (U.S. Sentencing Comm'n 2015). "Criminal activity" is defined as "any conduct constituting a criminal offense under federal, state, local, or foreign law." *Id.*, comment. (n. 4). Over Stubbs' objection, the district court applied this enhancement, finding by a preponderance of the evidence that the NRF rebate scheme met the elements of criminal fraud.

14

On appeal, Stubbs argues that the district court erred in making that finding. He notes that the state suits were civil, not criminal, and states, "[t]he NRF rebate program was described at trial . . . . There is nothing fraudulent about it. It is a simple concept operating on the fact that a large number of people will not follow simple instructions four years after purchasing windows or siding in order to get the rebate (called 'slippage')." Opening Br. at 39.

Stubbs fails to show that the district court clearly erred in finding that the record established, by a preponderance of the evidence, that NRF's rebate business met the elements of criminal fraud. That the state suits were civil rather than criminal does not preclude the district court's finding. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). The district court could consider the underlying facts even if the state suits had been criminal and Stubbs had been acquitted; what matters is that the facts meet the preponderance standard. *United States v. Watts*, 519 U.S. 148, 157 (1997) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."). And Stubbs ignores salient facts underlying the district court's finding, such as that the rebate instructions were onerous rather than simple, that NRF escrowed only a small fraction of the monies that would have been

15

needed to pay claims, and that the allegedly independent third-party company who handled claims actually was connected to Stubbs.

### B.     Sophisticated Means

USSG § 2T1.1(b)(2) provides for a two-level enhancement "[i]f the offense involved sophisticated means." U.S. Sentencing Guidelines Manual § 2T1.1(b)(2) (U.S. Sentencing Comm'n 2015). "'[S]ophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense," including "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts." *Id.*, comment. (n. 5). Over Stubbs' objection, the district court applied this enhancement because of Stubbs' use of NRF to conceal his compensation and income, his attempt to prevent Kool View from sending information to the IRS, and his attempts to present the third-party fund administrator as independent.

On appeal, Stubbs depicts his operations as "unsophisticated." Opening Br. at 36. "Nothing was concealed or hidden, all of his financial activities were documented by bank records, wire transfers, or his own business records in QuickBooks." *Id.* He further attempts to distinguish his circumstances from other cases in which this court upheld the application of § 2T1.1(b)(2).

Stubbs has failed to show that the district court's finding was clearly erroneous. Section 2T1.1(b)(2) "does not require a brilliant scheme, just one that displays a greater level of planning or concealment than the usual tax evasion case."

16

*United States v. O'Doherty*, 643 F.3d 209, 220 (7th Cir. 2011) (internal quotation marks omitted). "Indeed, the essence of the definition is merely deliberate steps taken to make the offense difficult to detect." *Id.* (ellipses and internal quotation marks omitted). "[T]he list contained in the application note is not exhaustive. . . . [T]he enhancement properly applies to conduct less sophisticated than the list articulated in the application note." *United States v. Jennings*, 711 F.3d 1144, 1147 (9th Cir. 2013). "[T]he fact that the concealment might not have been total does not mean that there was no effort at concealment or that the method employed was not sophisticated." *Id.*

In *O'Doherty*, the Seventh Circuit held that it was proper to apply § 2T1.1(b)(2) where the defendant "used corporations to avoid the direct reporting of income in his name" and "used the funds in those corporations as personal funds." 643 F.3d at 220. This conduct is similar to Stubbs' actions in using NRF's funds to pay personal expenses and to conceal his income. And in *Jennings*, the Ninth Circuit upheld the enhancement where the defendants only partially obscured their activities, using one defendant's real name and Social Security number to open a bank account to siphon money from their employer. 711 F.3d at 1147. The court noted that opening the account under the defendant's real name and Social Security number "might have made it somewhat less likely that the diversion of funds would go undetected," but went on to point out that an outside party would have to know other facts to figure out the scheme. *Id.* Similarly, Stubbs' activities might be imperfectly

17

concealed and even obvious from his own records, but an outside party without access to those records would have to know other facts to figure out the scheme.

For these reasons, the district court did not err in applying USSG §§ 2T1.1(b)(1) and (2).

## CONCLUSION

Stubbs' convictions and sentences are affirmed.

Entered for the Court

Mary Beck Briscoe
Circuit Judge