**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 29, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SHAWN CHRISTOPHER GORRELL,

    Defendant - Appellant.

No. 18-5041

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:17-CR-00010-GKF-1)**

_____

Barry L. Derryberry, Assistant Federal Public Defender (Julia L. O'Connell, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender for the Northern District of Oklahoma, Tulsa, Oklahoma, appearing for Appellant.

Jeffrey Gallant, Assistant United States Attorney (R. Trent Shores, United States Attorney, and Kevin C. Leitch, Assistant United States Attorney, on the brief), Office of the United States Attorney for the Northern District of Oklahoma, Tulsa, Oklahoma, appearing for Appellee.

_____

Before **BRISCOE**, **LUCERO**, and **MORITZ**, Circuit Judges.

_____

**BRISCOE**, Circuit Judge.

_____

Following a six-day jury trial, Shawn Gorrell was convicted of three counts of

wire fraud, 18 U.S.C. § 1343, and three counts of tax evasion, 26 U.S.C. § 7201.  In

this appeal he challenges only his three convictions for tax evasion and he seeks a new trial only on those counts.  He frames his issue in this way: "Whether plain error occurred when the jury instructions directed the jury to consider specified theories of an affirmative act (an element of tax evasion), which were legally invalid theories of guilt as a matter of law, the jury was instructed to be unanimous in finding an affirmative act, and the jury returned a general verdict of guilt."  Gorrell Opening Br. at 1.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

# I

We briefly recount the relevant facts underlying Gorrell's convictions before summarizing the provided jury instructions.

## A

Shawn Gorrell was an insurance salesman based in Tulsa, Oklahoma.  His father was an accountant in Tulsa whose clients included several dentists and Gorrell sold insurance to some of them.  In 2009, Gorrell began to pitch investments to these dentists that were outside of his typical insurance products.  Some dentists initially gave Gorrell modest sums to invest, but later the amounts ballooned to hundreds of thousands of dollars.

Some of these funds were placed in a legitimate investment known as the Tax Credit Funding Group ("TCFG").  TCFG was started by John Walsh in 2011.  The premise behind TCFG was simple: the federal government provided certain tax credits to businesses affected by Hurricane Katrina, and TCFG provided tax refund anticipation loans to these eligible businesses.  One of Walsh's friends mentioned

2

that Gorrell was interested in investing in TCFG, so Walsh offered the investment opportunity to him. Gorrell subsequently invested $200,000 in TCFG on behalf of his clients.

In June 2011, Walsh began planning a second fund, Tax Credit Funding Group II ("TCFG II"). Gorrell invested another $200,000 in TCFG II. But TCFG II never really got off the ground, and Walsh returned the second $200,000 investment to Gorrell in July 2011. Walsh wound down TCFG in December 2011 and returned all profits and principal to Gorrell by February 2012. But rather than return these monies to his investors, Gorrell kept both the profit or principal from the TCFG investment as well as the funds he was given to invest in TCFG II. He was also misusing investor funds in other ways. Carol Guies, a director of examination and inspections at the Oklahoma Department of Securities, testified at trial that from April 2011 to October 2012 Gorrell engaged in risky day trading through a personal E*Trade account. Gorrell initially funded the E*Trade account with his own money (and investor funds from TCFG), but later deposited the investors' money directly into the account. The investors involved had not given him permission to use their funds in this way.

Tanner Sanders, a special agent with the Internal Revenue Service, also testified at trial. Sanders testified that he examined various financial accounts belonging to Gorrell, including his personal Bank of Oklahoma account, several personal Chase Bank accounts, his personal E*Trade account, and a business account at the Bank of Oklahoma for TCFG funds. There was ample testimony given

3

throughout the trial that Gorrell commingled the investors' money and his business funds with his personal bank accounts and E*Trade accounts.[1]

The government also provided evidence at trial that Gorrell stopped having his father prepare his tax returns. For several years, Gorrell's father (an accountant) had prepared Gorrell's tax returns for free. However, Gorrell later hired a different tax preparer, the Tax Defense Network, in 2013 to help him file outstanding and amended tax returns for the 2009, 2011, and 2012 tax years. Naydali Maldonado-Hurst, a certified public accountant with the Tax Defense Network, and Mark Giles, a tax analyst with the Tax Defense Network, testified at trial that Gorrell exhibited a pattern of not providing the service with the information it needed to prepare his tax returns despite repeated email communications over several weeks; that Gorrell eventually provided unsubstantiated statements regarding investment income; that several of Gorrell's explanations regarding his financial activity and income did not align with the records he provided; and that even when pressed Gorrell failed to provide documentation regarding his trading activity.

The government also presented evidence at trial regarding Gorrell's unreported income in the 2009, 2011, and 2012 tax years. In 2009, Gorrell received $50,000 from one investor. Gorrell deposited these funds into his business's bank account, and in April 2009 he began to transfer funds from this account to his personal bank account. He then used these funds for personal expenses. The government produced

---

[1] Gorrell opened the E*Trade account in 2011, so any commingling in 2009 did not include the E*Trade account.

testimony at trial that, based on this activity, Gorrell failed to report $50,000 in taxable income for the 2009 tax year.

In 2011, Gorrell received $880,000 from investors. He returned approximately $235,000 to these investors during the year. However, he also used the investors' funds for personal expenses such as day trading through an E*Trade account.[2] Government witnesses testified that, based on these financial records, Gorrell failed to report $377,708 in taxable income in the 2011 tax year.

In 2012, Gorrell received more than $1,300,000 from investors. While he returned approximately $227,000 to these investors, he also used the investors' funds for personal expenses, including day trading through his E*Trade account, personal credit card payments, and loan payments.[3] Government witnesses testified that, based on his failure to report the more than $1,000,000 in appropriated funds belonging to investors as taxable income, Gorrell failed to pay nearly $373,000 in taxes for the 2012 tax year.

**B**

When instructing the jury, the district court incorporated the affirmative act allegations contained in the Superseding Indictment, the elements of tax evasion, and the requirement that the jury be unanimous in its determination of the affirmative act

---

[2] Gorrell deposited approximately $185,000 of investor money directly into his E*Trade account, and also deposited investor money into his personal bank accounts.

[3] As in 2011, Gorrell deposited the investors' money directly into his E*Trade account and personal bank account in 2012.

that formed the basis of the conviction for each count. The jury returned a unanimous general guilty verdict on each count. Given its general verdict, the jury did not identify which affirmative act formed the basis for each tax evasion conviction. Gorrell argued that if any of the four affirmative acts he identified are legally insufficient, his convictions are invalid and he is entitled to a new trial. The government responds that each affirmative act incorporated into the jury instructions is legally sufficient to sustain Gorrell's convictions.

Jury Instruction Number 18 lists the four elements of tax evasion under 26 U.S.C. § 7201. Instruction Number 18 provides:

> To find the defendant guilty of tax evasion, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:
>
> *FIRST*: The Defendant owed substantial income tax in addition to the tax liability which he reported on his income tax return for the year charged in a particular Count;
>
> *SECOND*: The Defendant intended to evade and defeat payment of that additional tax;
>
> *THIRD*: The Defendant committed an affirmative act in furtherance of this intent, as charged in the Superseding Indictment; and
>
> *FOURTH*: The Defendant acted willfully, that is, with the voluntary intent to violate a known legal duty.

App'x Vol. I at 117. Jury Instruction Number 19 defines an "affirmative act of evasion" and further explains that "[t]he government needs only to prove one act of evasion to satisfy this element of the offense, but you must unanimously agree on which act or acts were committed." *Id.* at 118. Jury Instruction Number 17 lists six

6

actions which the government asserts satisfy the affirmative act element of tax evasion. The same six affirmative acts are found in each count of tax evasion.[4] Gorrell argues that four of these alleged affirmative acts are legally insufficient to sustain a conviction for tax evasion based on the evidence produced at trial. The four affirmative acts at issue are:

> a. **GORRELL** caused investor funds to be deposited into various accounts at banks and E*TRADE that he maintained in his own name and in the name of his financial services company, Gorrell Financial, Inc., thereby commingling the investor funds with his personal funds and converting them to his own use;

> b. **GORRELL** caused the payment of personal expenses from investor funds that had been deposited into the various financial accounts that he maintained at banks and at E*TRADE;

> c. **GORRELL** caused the withdrawal of large amounts of cash from the various financial accounts that he maintained at banks and at E*TRADE;

> d. **GORRELL** stopped using tax preparation services provided to him for free by his father, who was an accountant in Tulsa, Oklahoma, and instead engaged new tax preparers, located in Florida, who were previously unfamiliar with his business ventures, financial accounts, personal income, and expenses . . . .

App'x Vol. I at 112–15.

## II

"We review de novo whether jury instructions, as a whole, correctly state the law and provide the jury with an understanding of the issues. We will disturb a judgment only if we have 'substantial doubt that the jury was fairly guided.'" *United States v. Little*, 829 F.3d 1177, 1181 (10th Cir. 2016) (internal citation omitted)

---

[4] The only difference in each count is the taxable income year.

(quoting *United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir. 1994)). However, Gorrell did not object to the jury instructions at trial, therefore we review Gorrell's challenge to the jury instructions only for plain error. *United States v. Pablo*, 696 F.3d 1280, 1287 (10th Cir. 2012). To obtain relief under this standard, Gorrell must show that the district court made (1) an error, (2) that was plain or obvious, (3) that affected his substantial rights, and (4) also seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* But before we address Gorrell's challenge to the jury instructions, we must decide whether the challenge has been waived under Federal Rule of Criminal Procedure 12.

## A

The government argues that while Gorrell styles his issue as a challenge to the jury instructions, he is in fact alleging that the Superseding Indictment was legally deficient. The government proceeds to argue that Gorrell was required to raise his argument through a pretrial motion under Federal Rule of Criminal Procedure 12(b)(3).[5] The government further asserts that, since Gorrell did not raise his

---

[5] Under Federal Rule of Criminal Procedure 12(b)(3),

> the following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
>
> . . . .
>
> (B) a defect in the indictment or information, including:
> (i) joining two or more offenses in the same count (duplicity);

8

argument in a pretrial motion, this court may only entertain the argument if Gorrell

shows good cause as required under Federal Rule of Criminal Procedure 12(c)(3).[6]

*United States v. Bowline*, 917 F.3d 1227, 1230 (10th Cir. 2019) ("Rule [12] clearly

provides only one circumstance in which an untimely motion can be considered—

when the movant 'shows good cause.'" (quoting Fed. R. Crim. P. 12(c)(3))).  The

government argues Gorrell has waived his issue because he has not shown good

cause.

As we view the issue Gorrell raises, Rule 12(b)(3) does not apply.  Under Rule

12(b)(3), Gorrell was required to challenge the Superseding Indictment by pretrial

motion for failure to state an offense only "if the basis for the motion [wa]s . . .

reasonably available [before trial] and the motion c[ould] be determined without a

trial on the merits."  Fed. R. Crim. P. 12(b)(3).  Therefore, had Gorrell argued on

appeal that the alleged affirmative acts could *never*, under any evidence presented,

constitute an affirmative act of tax evasion, then he would have been required to

---

                      (ii) charging the same offense in more than one count
                         (multiplicity);
                      (iii) lack of specificity;
                      (iv) improper joinder; and
                      (v) *failure to state an offense*[.]

Fed. R. Crim. P. 12(b)(3) (emphasis added).

    [6] "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely.  But a court may consider the defense, objection, or request if the party shows good cause."  Fed. R. Crim. P. 12(c)(3).

challenge the Superseding Indictment before trial and his failure to do so could only be excused for good cause as required under Rule 12(c)(3).

But we understand Gorrell as raising a different issue. On appeal, perhaps inartfully, Gorrell asserts that the jury was improperly instructed because the alleged affirmative acts contained in the jury instructions (as set forth in the Superseding Indictment) are legally insufficient in light of the evidence presented at trial. For example, we do not believe that Gorrell is claiming that the commingling of funds can *never* constitute an affirmative act for tax evasion purposes, but instead that *his* commingling of funds *in this case* was not an affirmative act of tax evasion because the government did not produce evidence *at trial* that Gorrell's commingling concealed his tax liability from the government. Such a defense is inappropriate for pretrial resolution under Rule 12. *Cf. United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) ("Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'" (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969))). Accordingly, Gorrell did not waive his challenge to the jury instructions, and we proceed to review for plain error.

## B

Criminal tax evasion is defined in 26 U.S.C. § 7201: "Any person who willfully attempts in any manner to evade or defeat any tax imposed by [the Internal Revenue Code] or the payment thereof shall[]. . . be guilty of a felony . . . ." This

10

crime has three elements: "willfulness; the existence of a tax deficiency; and an affirmative act constituting an evasion or attempted evasion of the tax." *Sansone v. United States*, 380 U.S. 343, 351 (1965) (internal citations omitted). In this appeal, the focus is on the third element, and "[t]he government need only prove one affirmative act of tax evasion for each count charged." *United States. v. Boisseau*, 841 F.3d 1122, 1125 (10th Cir. 2016).

While § 7201 does not define "evade," "defeat," or "attempts," the Supreme Court has provided guidance. In interpreting § 7201's predecessor statute, the Court explained that "[t]he difference between willful failure to pay a tax when due, which is made a misdemeanor, and willful attempt to defeat and evade one, which is made a felony, is not easy to detect or define." *Spies v. United States*, 317 U.S. 492, 497 (1943). It further provided "[t]he difference between the two offenses, it seems to us, is found in *the affirmative action* implied from the term 'attempt,' as used in the felony subsection." *Id.* at 498 (emphasis added). And, in conclusion, stated:

> Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation. Nor would we by definition constrict the scope of the Congressional provision that it may be accomplished 'in any manner'. By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries of alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal. If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime.

11

*Id.* at 499.

Gorrell argues that four of the affirmative acts described in the jury instructions are, based on the evidence presented at trial, not affirmative acts of evasion within the meaning of § 7201. The four affirmative acts are: commingling of funds, paying personal expenses with investor funds, withdrawing cash from various funds, and changing accountants. Therefore, since the jury returned a general guilty verdict on each count without specifying which affirmative act served as the basis for each count, Gorrell argues the jury may have based his convictions on an insufficient legal theory which thereby entitles him to a new trial. The government responds that the alleged affirmative acts were legally sufficient. After review of the evidence presented at trial, we conclude that each of the alleged affirmative acts were legally sufficient and also supported by the evidence.

**1**

Gorrell argues that "[c]ommingling the legal money with the illegal money did not potentially conceal taxes owed, because both types of money were equally taxable." Gorrell Opening Br. at 23. He asserts that his commingling is not an affirmative act of tax evasion because there was a paper trail and, as a result, nothing was concealed from the government. But this argument misses the mark.

"Congress has proscribed attempts to evade taxes 'in any manner,' 26 U.S.C. § 7201, [thus] the type of affirmative conduct that can constitute an affirmative act of evasion is broad." *Boisseau*, 841 F.3d at 1125. Even "[l]awful conduct can constitute an affirmative act under § 7201 when done with the intent to evade taxes,

12

even if the conduct serves other [non-evasion] purposes as well." *Id.*; *see also United States v. Vernon*, 814 F.3d 1091, 1105 (10th Cir. 2016) (rejecting argument that jury instructions improperly included affirmative acts of evasion that were "not crimes"). As such, the affirmative act inquiry is "closely connected" to the willfulness element. *Boisseau*, 841 F.3d at 1127; *accord* App'x Vol. I at 117 (Jury Instruction Number 18) ("To find the defendant guilty of tax evasion, you must be convinced that . . . [t]he Defendant intended to evade and defeat payment of [an] additional tax [and that t]he Defendant committed an affirmative act in furtherance of this intent, as charged in the Superseding Indictment . . . ."). And both of these inquiries are necessarily fact-intensive. *See Vernon*, 814 F.3d at 1099–103 (discussing the facts from which a reasonable jury could decide that the defendant used a variety of business practices to willfully conceal income from the Internal Revenue Service); *Boisseau*, 841 F.3d at 1125–27 (detailing facts under which a reasonable jury could determine that entity formation, changes in compensation structure, and misrepresentations to the Internal Revenue Service constitute affirmative acts of evasion under § 7201).

Gorrell's commingling argument ignores the intent inquiry. Because even "[l]awful conduct can constitute an affirmative act under § 7201 when done with the intent to evade taxes," *Boisseau*, 841 F.3d at 1125, we do not ask whether the commingling left a paper trail but instead whether there was sufficient evidence for a jury to determine that Gorrell commingled funds with the intent to evade taxes. In this case, the government presented ample evidence for a reasonable jury to

13

determine that Gorrell commingled funds with the intent to evade taxes, therefore the district court properly instructed the jury on this affirmative act of evasion.[7]

**2**

Gorrell argues that his payment of personal expenses with investors' funds is not an affirmative act of evasion. This argument is foreclosed under this circuit's precedents. *See, e.g.*, *Boisseau*, 841 F.3d at 1126 (requesting income for compensation in the form of payment of personal expenses, rather than salary, is an affirmative act for tax evasion purposes); *Vernon*, 814 F.3d at 1096–97, 1101 (using a shell corporation to fund personal expenses is an affirmative act of evasion); *United States v. Mounkes*, 204 F.3d 1024, 1030 (10th Cir. 2000) ("Both the diversion of corporate funds to personal use and the structuring of payments to avoid IRS reporting requirements are affirmative acts constituting evasion or attempted evasion of income taxes." (internal quotation marks and alterations omitted)); *United States v. Swallow*, 511 F.2d 514, 521 (10th Cir. 1975) ("The final element of the [§] 7201 offense is an affirmative act constituting an attempt to evade or defeat the tax. The conduct must amount to a willful and positive attempt to evade a tax in any manner or to defeat it by any means. It may involve concealment of assets or covering up sources of income, or handling one's affairs to avoid making records usual in

---

[7] We join the Seventh and Ninth Circuits in holding that commingling funds can be an affirmative act for purposes of tax evasion. *See, e.g.*, *United States v. Collins*, 685 F.3d 651, 656–57 (7th Cir. 2012) (commingling of business and personal accounts sufficient to sustain a conviction for tax evasion); *United States v. Boone*, 951 F.2d 1526, 1540–41 (9th Cir. 1991) (commingling investor money and personal funds sufficient to sustain a conviction for tax evasion).

transactions of the kind involved, or any conduct whose likely effect would be to mislead or conceal." (internal citation omitted)). Accordingly, because it is well settled in this circuit that using business funds to pay personal expenses is a deceptive act that conceals the source of income, the district court properly instructed the jury on this alleged affirmative act of evasion.

**3**

Gorrell also asserts that withdrawing cash from various accounts (including his E*Trade and business accounts) is not an affirmative act of evasion for the same reason that using investors' funds to pay personal expenses is not an affirmative act of evasion. Because we reject the latter argument, we reject the former as well. Further, there is no material distinction between using funds from non-personal accounts to pay personal expenses and withdrawing cash from non-personal accounts to pay personal expenses. Both acts conceal the source of income. Accordingly, the district court properly instructed the jury on this alleged affirmative act of evasion.

**4**

We also reject Gorrell's final argument that changing accountants is not an affirmative act of evasion. Like his commingling argument, this argument ignores the intent inquiry, and the weight of authority strongly suggests that changing accountants, when done with the intent to evade taxes, constitutes an affirmative act of evasion. This is especially true where, as here, the previous tax preparer was intimately familiar with the defendant's personal finances, past business practices, and personal history.

15

We have suggested that ignoring and disobeying an accountant's advice that a certain trust structure would be disregarded for income tax purposes can constitute an affirmative act for tax evasion purposes. *See United States v. Meek*, 998 F.2d 776 (10th Cir. 1993) (affirming a conviction for tax evasion on plain-error review despite a jury instruction challenge regarding the affirmative act element of tax evasion). Similarly, we have upheld a tax evasion conviction where defendants supplied misleading bookkeeping records to their accountant. *United States v. Kaatz*, 705 F.2d 1237, 1246 (10th Cir. 1983) ("[Defendants] handled their affairs so as to avoid making the records usual to the businesses which they operated, and they did not disclose to their accountant the receipts which they diverted. Substantial evidence establishes the noted facts, and sustains a reasonable inference of willfulness. The [r]ecord supports the jury verdict finding each defendant guilty of each count in which he was named." (internal citation omitted)).

This case presents a natural application of the above principle and is consistent with Supreme Court authority. According to *Spies*, the "handling of one's affairs to avoid making the records usual in transactions of the kind" can give rise to criminal tax evasion liability. 317 U.S. at 499. Thus, as recognized by other circuits, defendants commit an affirmative act of evasion when they provide inaccurate information to tax preparers. *See, e.g.*, *United States v. Litwok*, 678 F.3d 208, 215–16 (2d Cir. 2012) (holding that barring an accountant from verifying the accuracy of trading account statements that the accountant claimed were inaccurate constituted an affirmative act for tax evasion purposes); *United States v. Bishop*, 264 F.3d 535, 552

16

(5th Cir. 2001) (holding that providing incomplete and inaccurate information to tax preparer is an affirmative act for tax evasion purposes).

In this case, a reasonable jury could determine that Gorrell intended to evade taxes when he changed accountants, therefore the jury could permissibly decide that his behavior constituted an affirmative act of evasion. At trial, the government elicited testimony showing that Gorrell used his father's free tax preparation services for years before he switched to a new tax preparer who was ignorant of his business practices and personal finances; that he exhibited a pattern of not providing information to the Tax Defense Network despite repeated email communication for months; that Gorrell provided unsubstantiated and unsupported declarations regarding his investment income to the Tax Defense Network; that he went silent for weeks or months at a time when working with the Tax Defense Network; that he failed to provide explanations regarding activity that did not align with the records he eventually provided to the Tax Defense Network; and that he failed to provide certain documents to the Tax Defense Network regarding his trading activity when pressed for the documents. Accordingly, the district court did not err in its instructions to the jury regarding this alleged affirmative act of evasion.

### III

The district court did not err, much less plainly err, in its instructions to the jury. Given the evidence elicited at trial, in light of those instructions, Gorrell's convictions for tax evasion are supported.

We affirm.

17