FILED
United States Court of Appeals
Tenth Circuit

July 15, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JUAN D. MORALES,

      Defendant - Appellant.

No. 13-3202

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 6:13-CR-10030-EFM-1)**

---

John K. Henderson, Jr., Assistant Federal Public Defender, Wichita, Kansas, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief), Topeka, Kansas, for Plaintiff-Appellee.

---

Before **KELLY**, **MURPHY**, and **HARTZ**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

**I.     Introduction**

Defendant-appellant, Juan D. Morales, was found guilty of being a convicted felon in possession of a firearm and sentenced to eighty-six months' imprisonment.  In this appeal, Morales argues the evidence was insufficient to support his conviction.  He also argues his Fifth Amendment due process rights were violated when he was placed in handcuffs and transported through the public area of the courthouse in view of the venire.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** Morales's conviction and **deny** his request for a new trial.

**II.     Discussion**

*A.     Sufficiency of the Evidence*

In March 2010, Deputy Brandon Hornback of the Ford County Sheriff's Department stopped a vehicle in which Morales was a passenger.  Morales immediately exited the vehicle and fled from the scene on foot.  Deputy Hornback chased Morales through the side yard of a residence, apprehending him approximately one block from the spot where the traffic stop was initiated.  After a shell casing was found inside the vehicle, officers searched for a weapon by retracing the path of Morales's flight.  They found a loaded handgun in the yard through which Deputy Hornback chased Morales.  They also found a cell phone on the ground near the vehicle.  The phone was placed in Morales's property bag at the jail and Morales took it when he was released.

Morales was charged with, *inter alia*, possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).[1] The matter was tried before a jury on May 16, 2013. At trial, Deputy Hornback described the stop of the vehicle, the subsequent foot chase, and the recovery of the firearm and the cell phone. Specifically, he testified Morales exited the vehicle immediately after it came to a stop and then ran approximately one block before he was apprehended. Deputy Hornback also testified he did not see Morales drop or throw any objects, but both the firearm and cell phone were found along the path Morales traveled as he fled. According to Deputy Hornback, the firearm was discovered near a tree on the side of a residence. It was not dusty, dirty, or wet. Based on the condition of the firearm when it was found, Deputy Hornback opined it had not "been lying there for very long."

On appeal, Morales argues there was insufficient evidence to support his conviction. This court reviews Morales's sufficiency claim *de novo*, examining the evidence in the light most favorable to the Government. *United States v. Cardinas Garcia*, 596 F.3d 788, 794 (10th Cir. 2010). To obtain the § 922(g)(1) conviction, the Government was required to prove (1) Morales is a convicted felon, (2) he knowingly possessed a firearm or ammunition, and (3) the possession was in or affecting interstate commerce. *United States v. Colonna*,

---

[1]The other charge in the indictment was dismissed on the Government's motion.

-3-

360 F.3d 1169, 1178 (10th Cir. 2004). On appeal, the only element Morales challenges is whether he knowingly possessed the firearm.

Possession of a firearm for purposes of § 922(g)(1) can be either actual or constructive. *United States v. McCane*, 573 F.3d 1037, 1046 (10th Cir. 2009). "Actual possession exists when a person has direct physical control over a firearm at a given time. Constructive possession exists when a person knowingly holds the power and ability to exercise dominion and control over a firearm." *Id.* (quotations and citation omitted). Morales raises several challenges to the Government's evidence. He asserts the Government failed to prove he actually possessed the firearm because there was no direct evidence he carried or dropped it. To the contrary, Deputy Hornback testified he lost sight of Morales for several seconds during the chase and did not see him throw the firearm. Morales also asserts there was no DNA or fingerprint evidence connecting him to the firearm. Finally, he argues the jury could not reasonably have found he constructively possessed the firearm because he did not have dominion or control over the yard in which it was located.

After thoroughly reviewing the record, Morales's arguments are easily rejected. "Like any other fact in issue, possession [of a weapon by a prohibited person] may be proved by circumstantial as well as direct evidence." *United States v. McCoy*, 781 F.2d 168, 171 (10th Cir. 1985) (quotation omitted). Based on the circumstantial evidence presented by the Government, viewed collectively,

a reasonable jury could conclude Morales actually possessed the firearm. Officers testified it was uncommon to find loaded weapons in residential yards in Dodge City, Kansas. The Government presented testimony the firearm was found along Morales's path of travel and photographs showing it was free of dirt, dust, moisture, and debris when it was recovered. A jury could reasonably conclude from this evidence that the weapon was dropped by Morales as he ran from Deputy Hornback and recovered shortly thereafter.

The Government introduced two other pieces of circumstantial evidence that provide additional support for the jury's verdict. First, Morales fled when the vehicle in which he was traveling was pulled over for a traffic violation. "It is well recognized that a defendant's intentional flight from police officers may be used as circumstantial evidence of guilt." *United States v. Fernandez*, 18 F.3d 874, 879 n.4 (10th Cir. 1994). There was testimony Morales was on parole at the time of the traffic stop and, thus, faced the possibility of being returned to prison if found in possession of a weapon. Thus, the jury could reasonably conclude Morales fled to avoid being found with the firearm in his possession. Additionally, the jury heard testimony that a cell phone was found along the path Morales took while fleeing from Deputy Hornback. The phone was retained by Morales after he was released from jail. From this evidence, the jury could reasonably conclude (1) the phone belonged to Morales and (2) he had actual

possession of both the phone and the firearm at the time he exited the vehicle, dropping both as he ran.

Viewing all the evidence collectively[2] and in the light most favorable to the Government, a reasonable jury could conclude Morales had "direct physical control over [the] firearm" immediately before discarding it during the chase. *McCane*, 573 F.3d at 1046.  Accordingly, the evidence was sufficient to sustain the jury's finding that Morales knowingly possessed the firearm.

### B.    Handcuffing

Morales also argues his Fifth Amendment due process right to a fair trial was violated when he was transported through the courthouse in handcuffs. According to Morales, during a break in the jury selection process, United States Marshals placed him in handcuffs and walked him through the hallway in front of potential jurors.  Counsel described the incident to the district court as follows:

---

[2]In his opening and reply briefs, Morales argued the jury could not reasonably find him guilty without piling inference upon inference. *See United States v. Anderson*, 189 F.3d 1201, 1205 (10th Cir. 1999) ("[W]e may not uphold a conviction obtained by piling inference upon inference." (quotation and alteration omitted)).  During oral argument, however, counsel conceded the jury was not required to pile inference upon inference but, rather, was only asked to consider multiple pieces of indirect evidence in the aggregate.  The exception to counsel's concession was the Government's evidence that the spent shell casing found in the vehicle and the live casings found in the firearm were both .380 caliber.  The ammunition was not from the same manufacturer.  Because the Government's evidence is more than sufficient to support the verdict even if the caliber of the casings is not considered, it is unnecessary to address Morales's argument on this point.

> Your Honor, my concern is that the marshals cuffed my client. I don't think any jurors saw that. But then they walked him through the hallway. He was cuffed. I walked beside him. I tried to hide the handcuffs with my hand. But then we got to the elevator, well, there were several jurors standing around the elevator. Well, the marshals told them to get away, that they had to take charge of the elevator. They put him in the elevator . . . .

Counsel requested impanelment of a new venire, and argued it was unnecessary to handcuff Morales because he is "not an individual who presents any threat." During the *in camera* hearing, the district court revealed the Marshals had informed the court in advance they intended to handcuff Morales when they transported him through the courthouse based on their security concerns. The court engaged in a colloquy with Morales's counsel over possible alternatives to the handcuffing, but concluded the alternatives were either similarly prejudicial or failed to address the security concerns. The district court refused to impanel a new venire but agreed to admonish the jury and invited Morales to address the incident during voir dire if he so chose. Nothing in the record indicates Morales questioned the venire about the incident.[3]

Morales raised the handcuffing issue again in his Motion for Judgment of Acquittal and the Government filed a response. In its written order denying the motion, the district court rejected the Government's reliance on *United States v. Simpson*, a case in which this court held that "an isolated view of jurors of a

---

[3]Morales's counsel conceded during oral argument that he did not question the jury pool during voir dire to determine if any member had seen Morales in handcuffs.

defendant in handcuffs does not justify a new trial in the absence of a showing of actual prejudice." 950 F.2d 1519, 1522 (10th Cir. 1991). The court, instead, applied the test from *Deck v. Missouri*, concluding Morales was not entitled to a new trial because security concerns justified the handcuffing. 544 U.S. 622, 624 (2005) (holding the use of visible shackles during the penalty phase violates the Fifth Amendment "unless that use is justified by an essential state interest—such as the interest in courtroom security—specific to the defendant on trial" (quotation omitted)).

This court reviews the district court's denial of Morales's motion for a new trial for an abuse of discretion. *United States v. Wardell*, 591 F.3d 1279, 1293 (10th Cir. 2009). "The Fifth . . . Amendment[] prohibit[s] the use of physical restraints visible to a jury absent a trial court determination, in the exercise of its discretion, that they are justified by a [governmental] interest specific to a particular trial." *Deck*, 544 U.S. at 629; *see also id*. at 626 ("The law has long forbidden routine use of visible shackles during the guilt phase . . . ."). In *Deck*, the Supreme Court extended this prohibition to "the penalty phase of a capital proceeding." *Id*. at 632-33. The Court, however, noted that trial courts retain discretion "to take account of special circumstances, including security concerns, that may call for shackling." *Id*. at 633. But, if a trial court orders a defendant to wear visible shackles without adequate justification, the defendant is not required to show actual prejudice to make out a due process claim. *Id*. at 635. Instead, the

-8-

Government "must prove beyond a reasonable doubt that the shackling error complained of did not contribute to the verdict obtained." *Id*. (quotation and alteration omitted).

Although the appellate arguments of both parties center on *Deck*, it is unclear whether the *Deck* analysis applies. Morales was not restrained during all or a portion of the courtroom proceedings but only when he was transported through the common area of the courthouse. The record indicates this occurred only once, and Morales does not argue he was transported in handcuffs multiple times. We have previously held that "an isolated view by jurors of a defendant in handcuffs does not justify a new trial in the absence of a showing of actual prejudice." *Simpson*, 950 F.2d at 1522. We reiterated this ruling in a post-*Deck* opinion. *United States v. Jones*, 468 F.3d 704, 709 (10th Cir. 2006) ("[A] juror's brief view of a defendant in shackles does not qualify as a due process violation worthy of a new trial."); *accord Vera v. Ryan*, 508 F. App'x 603, 604 (9th Cir. 2013) (unpublished disposition) ("[Defendant's] clearly established due process rights were not violated by a few jurors catching a fleeting view of him in handcuffs while he was being transported."). Under this court's precedent, therefore, it appears Morales bears the burden of showing prejudice. *Simpson*, 950 F.2d at 1522. He has wholly failed to meet that burden. In fact, nothing in the record confirms that any seated juror actually saw him in the handcuffs. *See United States v. McKissick*, 204 F.3d 1282, 1299 (10th Cir. 2000) (refusing to

presume prejudice in the absence of evidence jurors noticed the stun belt worn by the defendant). To the contrary, Morales's counsel advised the district court that (1) he did not believe any member of the venire saw the Marshals place the handcuffs on Morales and (2) there were "several" members of the jury pool at the elevator when the Marshals placed Morales on it. Because Morales made the strategic decision not to question the venire about the incident despite the district court's permission to pursue such questioning, the record does not reveal whether any of those "several" members of the venire were seated on the jury.

Even if we assume both that *Deck* applies and that a seated juror saw Morales in handcuffs, the due process argument fails. A defendant can make out his due process claim without demonstrating actual prejudice only if the trial court permitted the use of visible shackles "without adequate justification." *Deck*, 544 U.S. at 635. Adequate justification can be based on a "need to protect the courtroom and its occupants," including "special security needs or escape risks, related to the defendant on trial." *Id*. at 633; *see also id*. at 629 (noting the district court's determination on shackling during the guilt phase may "take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial"). As the district court stated in its order denying Morales's Motion for Judgment of Acquittal,

> [Morales] presented a lengthy prior record of nearly two dozen
> offenses, going back to his early juvenile years, including battery,
> assault, probation violations, obstruction of process, aggravated

assault, weapons charges, escape from custody, discharge of firearm
at an occupied vehicle, and criminal threat. He was listed by NCIC
as a gang member.

The Presentence Investigation Report ("PSR") confirms the district court's assessment of Morales's criminal history.

The PSR reveals Morales has eight juvenile convictions, including a conviction for aggravated escape. At the time he was convicted of the instant § 926(g)(1) violation, he was twenty-six years old and had eight adult convictions. Although four of the adult convictions were for minor violations, the remaining adult convictions involved more serious conduct. When Morales was nineteen, he was charged with attempt to commit first degree murder, criminal discharge of a firearm, and criminal possession of a weapon. He was convicted of criminal discharge of a firearm at an occupied dwelling, and criminal discharge of a firearm at a vehicle. When he was twenty-three, he was charged with trafficking contraband in a correctional institution, attempted battery of a state correctional officer, incitement to riot, riot, and criminal damage to property. The charges were dismissed pursuant to a plea and he was convicted of criminal threat. Morales was also charged with aggravated battery and aggravated intimidation of a witness. Those charges were dismissed after he pleaded guilty to criminal threat.

The record provides adequate justification for the district court's decision to permit Morales to be handcuffed while being transported through the common

areas of the courthouse.  Because Morales's criminal history includes, *inter alia*, an escape conviction and charged conduct involving violence against law enforcement officers, there was adequate justification for the handcuffing based on the "special security needs or escape risks, related to the defendant on trial."[4]

[4]It is unclear from the record whether the district court was aware of Morales's criminal history before or after it approved the handcuffing.  In response to Morales's request for a new venire, the court stated it permitted the handcuffing because it "never had reason to" "second-guess [the Marshals] on security issues."  When Morales's counsel asked the district court to elaborate on the security issues identified by the Marshals Service, the court stated:

> I don't have details on those.  Typically when I get those reports, unless I've got—unless I'm pretty deep in the facts on the case, I don't usually ask, well, what's he been doing or what's the situation.  I mean, if it's a nature of a charge that—and I can't think of a good example—where I wouldn't expect there to be security concerns, I might ask about that.  But on drug or gun offenses, I usually don't.  But that's what their report was to my chambers.

In the order denying Morales's Motion for Judgment of Acquittal, the district court stated the Marshals transported Morales "only after acquainting the [court] with their security concerns."  The district court, however, also stated the recommendation to transport Morales in handcuffs was based in part on "issues where [Morales] was being held pretrial (the details of which the Court was not informed)."

If the court permitted Morales to be handcuffed solely on the advice of the United States Marshals, it abused its discretion.  *See United States v. Haynes*, 729 F.3d 178, 189 (2d Cir. 2013) ("[T]he ultimate decision to impose any physical restraints during trial must be made by the District Court judge alone and must be made on the record.").  But any abuse of discretion was harmless in light of the record evidence detailing the specifics of Morales's criminal history, and the district court's reasoned judgment that no alterative arrangements were feasible. *See United States v. Wardell*, 591 F.3d 1279, 1294 (10th Cir. 2009) (holding visible restraints do not pose a constitutional problem when "(1) the court makes a defendant-specific determination of necessity resulting from security concerns;

(continued...)

*Deck*, 544 U.S. at 633; *see also Wardell*, 591 F.3d at 1293, 1296 (10th Cir. 2009) (holding "[s]ecurity needs or escape risks related to the defendant on trial" justify visible shackling and noting the defendant had two "previous convictions . . . for escape-related crimes" (quotation omitted)). Thus, Morales's Fifth Amendment claim fails.

## III. Conclusion

We **affirm** the judgment of conviction and **deny** Morales's request for a new trial.

---

[4](...continued)
and (2) it minimizes the risk of prejudice").