In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3312

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EUGENE WEARING,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:14-CR-00122-001 — **William M. Conley**, *Judge*.

ARGUED JULY 7, 2017 — DECIDED JULY 26, 2017

Before WOOD, *Chief Judge*, and BAUER and FLAUM, *Circuit Judges*.

WOOD, *Chief Judge*. Hoping to earn some money as a pimp, Eugene Wearing recruited a 15-year-old acquaintance, KV #1, to earn money as a prostitute. He posted a Craigslist ad with her photo and twice tried to arrange a rendezvous with a client. But both assignations fell through, and soon afterward KV #1 had second thoughts and alerted her mother, who called the authorities. At a bench trial Wearing was convicted

of violating 18 U.S.C. § 1591, which makes sex trafficking of children a federal crime if done "in or affecting interstate or foreign commerce." In this appeal Wearing challenges only the sufficiency of the evidence. He argues that the government was required to, but did not, prove two critical points: (1) that KV #1 had engaged in a "commercial sex act," and (2) that his recruitment of the victim (as opposed to the scheme as a whole) affected commerce. We find no merit in either argument, and so we affirm the conviction.

**I**

The bench trial was conducted entirely through a written stipulation. In it, Wearing admitted that he suggested to KV #1 that she could earn some money by performing oral sex. He drove her to a hotel and had her "audition" on him, after which he scheduled a client visit. But police were at the hotel for an unrelated matter, and no sexual contact took place because Wearing and the client felt that it was too risky. Later Wearing photographed KV #1 in her underwear and posted the pictures on Craigslist. He gave KV #1 a tour of an apartment where he said "business" would take place, explaining that she would "giv[e] blowjobs" or, "if she wanted," have intercourse with clients, though no clients joined them at that time. Wearing later took KV #1 back to the apartment; she asked to go home, but he refused, saying that she had committed to their arrangement and needed to do what he wanted. He then had intercourse with her and sent an e-mail inviting a client (who never responded) to join them at the apartment. The parties stipulated that before her mother contacted authorities, KV #1 had not engaged in a "commercial sex act," which 18 U.S.C. § 1591(e)(3) defines as "any sex act, on account of which anything of value is given to or received

by any person." The parties also stipulated that the Craigslist posting used channels of interstate commerce.

Wearing's only defenses at trial were that a conviction under section 1591 requires proof that the victim actually engaged in a commercial sex act, and that the recruitment itself had to have been (but was not) accomplished through means affecting commerce. The district court rejected both points. It held that section 1591 can be violated even if a commercial sex act is never consummated, and it concluded that all of a defendant's actions, not just his efforts to recruit child prostitutes, are relevant in assessing whether the statute's commerce element is satisfied. Although violations of section 1591 typically are described as "human trafficking"—the label the government used when describing Wearing's crime—the district court sentenced him to 180 months' imprisonment, well below the guidelines range of 324 to 405 months. The court thought that "child abuse" more accurately describes Wearing's offense and observed that "it's hard for me to see this as a classic case of human trafficking."

## II

In this court, Wearing renews his argument that in order to convict under section 1591 the government must prove that the victim actually engaged in a commercial sex act. If the government had included a charge of attempt to traffic under 18 U.S.C. § 1594(a), which carries the same penalties as the completed offense under section 1591, we would have little to do. Wearing's stipulation leaves no doubt that he completed every step necessary to bring about a commercial sex transaction between KV #1 and the client at the hotel; only the fortuitous presence of the police interrupted the crime. Moreover, we recognize that Federal Rule of Criminal Procedure 31(c)(3)

says that a defendant may be found guilty of "an attempt to commit an offense necessarily included in the offense charged, if the attempt is an offense in its own right." See also *United States v. Feinberg*, 89 F.3d 333, 339 (7th Cir. 1996) (explaining that lesser-included offenses, such as attempt, need not appear in indictment, so long as any departure from the strict terms of the indictment would neither surprise nor prejudice the defendant). It is possible that Rule 31(c)(3) is satisfied here, since section 1594(a) provides that whoever "attempts to violate section … 1591 shall be punishable in the same manner as a completed violation of that section." But no other circuit has excused the failure to charge under section 1594(a) in a situation such as this one. Rather than wade into a debate about charging requirements, surprise, prejudice, and the like, we prefer to turn directly to the merits.

We begin with the language of the statute. At the time of the crime, section 1591 read, in relevant part:

> (a) Whoever knowingly—
>
>> (1) in or affecting interstate or foreign commerce … recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person …
>>
>> …
>>
>> knowing, or in reckless disregard of the fact, that … the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

Wearing argues that the use of the future tense of the passive voice in the phrase "will be caused to engage in a commercial sex act" implies that Congress intended the completed act to be a necessary element of the crime. But his suggestion requires us to ignore the fact that Congress chose the *future* tense—a choice that is inconsistent with the notion that a commercial sex act must already have happened before a violation can be shown. A likelier explanation is that Congress used the passive voice as a way of signaling that the defendant was not entitled to a pass if, instead of personally causing the victim to engage in a sex act, the defendant allowed a client or a codefendant to do so. See *United States v. Adams*, 789 F.3d 903, 906–07 (8th Cir. 2015) (affirming mother's conviction under section 1591 where a rational jury could have inferred that, in exchange for pills, she took daughter to friend knowing he would order daughter to engage in sex act); *United States v. Jungers*, 702 F.3d 1066, 1073 & n.6 (8th Cir. 2013) (concluding that use of passive voice in section 1591 "reflects 'agnoticism … about who' causes the child to engage in the commercial sex act" (quoting *Watson v. United States*, 552 U.S. 74, 80 (2007)). Wearing's argument that "will" implies certainty because it is more definite than "may" or "might" is inaccurate—the *amicus curiae* brief filed in this case from a professional linguist even observes that "[i]n its central function of referencing the future, 'will' is vague over a range of degrees of certainty."

The more logical reading of the phrase "knowing … the person … will be caused to engage in a commercial sex act" is that it describes the acts that the defendant intends to take—that is, that he means to "cause" the minor to engage in commercial sex acts. That is the interpretation other circuits have adopted; they have concluded that the statute uses the future

tense to describe the defendant's plan for the victim at the time he recruits her. See, *e.g.*, *United States v. Mozie*, 752 F.3d 1271, 1286 (11th Cir. 2014) (accepting evidence that defendant recruited victims "to engage in commercial sex acts," even though those acts never materialized, as sufficient to support a section 1591 conviction); *United States v. Willoughby*, 742 F.3d 229, 241 (6th Cir. 2014) (concluding that section 1591 offense was complete when defendant left victim at client's home knowing she would be caused to perform a sex act); *United States v. Garcia-Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013) (reading section 1591 to require completed sex act as essential element "erases the meaning of 'will be' from" the statute); *Jungers*, 702 F.3d at 1074 (conviction under section 1591 does not require "engaging in a sex act"); *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) (explaining that section 1591's knowledge element means that, in committing offense, defendant plans to force the victim to engage in a commercial sex transaction); *United States v. Corley*, No. 14-1709, 2017 WL 549021, at *3 (2d Cir. Feb. 9, 2017) (rejecting contention that section 1591 requires government to prove victim actually performed commercial sex act).

Similar wording appears in 18 U.S.C. § 924(h), which prohibits transferring a firearm "knowing that such firearm will be used to commit" a crime of violence or drug trafficking crime. The words "will be used" cannot logically mean that a completed crime of violence is an element of section 924(h). If a gun-shop customer asks to buy a gun suitable for shooting a public official, the gun dealer who sells that firearm is guilty of the substantive offense, not just an attempt, if police stop the customer on his way to shoot the official. See *United States v. Smith*, 792 F.3d 760, 763, 768 (7th Cir. 2015) (affirming sec-

tion 924(h) conviction where defendant had sold firearms expecting that purchaser, an undercover agent posing as drug dealer, would smuggle guns to Mexico). The gun dealer in the hypothetical has completed every step of the crime. There is no reason to believe that Congress intended a conviction to turn on the customer's success in carrying out the shooting. Similarly, Wearing completed his role under section 1591; one client's failure to show up and the other's change of heart say nothing about Wearing's own actions.

It is true, as *amicus* points out, that section 1591 also requires knowledge of the victim's status as a minor. *Amicus* reasons that this means that at some point prior to the indictment, the commercial sex act must be completed. But it is one thing to know that a person "is" a minor, and quite another to know that the defendant "will" bring about an action in the future. In that critical sense, the two elements of the offense differ. The statute requires that the defendant recruit the victim knowing her current age and knowing his *plan* to prostitute her after the recruitment. Nothing in the statute signals that the plan must be fully carried out before conviction is possible.

Wearing next asserts that the government failed to prove that his actions affected interstate or foreign commerce as required by section 1591. Based on the statute's wording, he argues that "in or affecting" commerce modifies only the verbs immediately following the reference to interstate commerce—that is, "recruits, entices, harbors," etc.—and not the remainder of the statute. As a matter of first principle, one could imagine this reading of the statute, but we have not interpreted it in such a cramped way. In *United States v. Campbell*, we con-

cluded that a prostitution business affected interstate commerce by using Internet and telephone services from out-of-state companies, advertising online, purchasing out-of-state supplies, and employing out-of-state workers. 770 F.3d 556, 574–75 (7th Cir. 2014); see also *United States v. Phea*, 755 F.3d 255, 263 (5th Cir. 2014) (noting that defendant had purchased phone for victim and included phone number in Internet advertisement, clients contacted victim at that number, and defendant directed victim to have intercourse with prostitute from another state); *Todd*, 627 F.3d at 333 (concluding that sex trafficking advertised across state lines affected interstate commerce). Notably, all of these cases were decided *before* Congress amended the list of verbs in section 1591(a)(1) in 2015 to include "advertising" expressly. Wearing does not respond directly to these decisions; instead he cites others in which the commerce link was too attenuated from the defendant's illegal activity to support federal prosecution. The latter decisions do not help him, because his assertion is that section 1591's commerce requirement is linked to only one element of the offense—the recruitment. But there is more to the offense: the scheme to prostitute the minor. Wearing stipulated that the Craigslist advertisement—an integral part of his scheme to prostitute KV #1—affected interstate commerce. This precludes him from successfully maintaining that the effect of his actions on interstate commerce is so distant from his illegal activity that his actions do not add up to a federal crime.

The district court thought that this was not the classic case of human trafficking as described in the statement of purpose of the Trafficking Victims Protection Act, of which section 1591 is part. We are not so sure; unfortunately, trafficking happens, one victim at a time, at the domestic level just as it does internationally. Congress indicated in the statement of

purpose that it was concerned about the transnational and national effects of human trafficking, the role of sophisticated criminal enterprises, and the violence and isolation trafficking visits on poor women and children. 22 U.S.C. § 7101. Wearing sees his crime as indistinguishable from sexual abuse of a child or child prostitution, both punishable under the laws of Wisconsin, where this offense occurred. See WIS. STAT. §§ 948.02, 948.08. Only one victim was involved, Wearing did not isolate KV #1 from her family, and he did not transport her to another state or country.

There is no reason why Wisconsin and the federal government could not both have addressed this problem: overlapping state and federal laws are nothing new. Section 1591 is a statute designed to protect minors—even one minor—from forced participation in the sex trade. The facts to which Wearing stipulated are sufficient to support his conviction and the district court made no error of law, and so we AFFIRM the judgment of the district court.