**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 20, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL SHANNON,

    Defendant - Appellant.

No. 19-1202
(D.C. No. 1:18-CR-00353-CMA-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **PHILLIPS**, and **CARSON**, Circuit Judges.
_____

A jury found Michael Shannon guilty of possession of cocaine and possession of a firearm by a felon. He contends that there was insufficient evidence to support his convictions and that the district court erred in its instruction to the jury on possession of a firearm by a felon. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**BACKGROUND**

On April 12, 2018, officers from a multi-agency task force were conducting surveillance of a residence on East Moreno Avenue in Colorado Springs, attempting to locate an individual named Demontrae Wilson. A silver Ford Thunderbird with two male occupants was parked in front of the house. Officers saw one male, closely matching the description of Mr. Wilson, exit the front passenger side of the vehicle and walk toward the house. The driver remained alone in the vehicle for a few minutes and "did some moving around the passenger compartment," R., Vol. 4 at 98, including "reach[ing] toward the center console," *id*. at 199. When the driver exited the vehicle, officers recognized him as Mr. Shannon from prior investigations. After initially walking to the front of the house, Mr. Shannon walked away and entered a gold Infiniti sedan that pulled up outside the house.

Several officers then approached the residence and examined the Thunderbird along the way. The windows were heavily tinted, but they saw, in plain view, plastic baggies and a digital scale on the driver's side floorboard and a green bag covered up in the back seat. Once at the residence, the officers learned that the Thunderbird's passenger was not Mr. Wilson but was an individual named Zane Anderson.

Meanwhile, other officers followed the Infiniti, which traveled approximately half a mile to a neighborhood park known for drug activity. Mr. Shannon exited the vehicle, walked around the general area, spoke with a few people, and began walking back in the direction of the Thunderbird and the house where officers had hoped to locate Mr. Wilson. One officer exited his vehicle near Mr. Shannon and observed

2

him duck down between two vehicles as though he was attempting to hide something. The officer stopped Mr. Shannon and found a white and green Newport cigarette pack on the ground under a truck where Mr. Shannon had ducked down. Inside that pack were three baggies, including two containing what appeared to be cocaine. The officer searched Mr. Shannon and found two cell phones, a set of keys that included a key to the Thunderbird, and $680 cash split nearly evenly between his wallet and one of his pockets. One of the cell phones contained text messages from two days earlier from someone named "Ray Big," stating, "Yo, give me a call bro," followed by "I might need the AR now." *Id.* at 161-62 (internal quotation marks omitted).

Officers also seized and searched the Thunderbird. They found: (1) a white and green Newport cigarette pack, a digital scale, and plastic baggies on the driver's side floorboard; (2) a digital scale and plastic baggies in the driver's door pocket; (3) a white and green Newport cigarette pack containing a baggie of what appeared to be cocaine in the center console; and (4) a green camping chair, containing an AR-15 assault rifle, on the rear seat. The vehicle was registered to someone named Allen Covington,[1] but there were no documents concerning Mr. Covington in the vehicle. Instead, officers found documents for Mr. Shannon, including (1) his Colorado identification card in the center console; (2) an order cancelling his driver license in the passenger compartment; and (3) several documents in the trunk, including his

---

[1] Officers were unsuccessful in obtaining a phone number for Mr. Covington, and the registered address was a homeless shelter in Colorado Springs.

3

social security card, an apartment rent reminder in his name, and an arrest warrant referencing someone named "Bossy," *id.* at 156, which was Mr. Shannon's nickname.

Field testing indicated the baggies contained cocaine, but subsequent forensic testing showed the substances were cocaine and methamphetamine. Specifically, the cigarette pack in the center console of the Thunderbird contained a baggie with 2.51 grams of cocaine, and the pack found on the ground of the parking lot contained one baggie with 2.35 grams of cocaine and another with 5.22 grams of methamphetamine.

A jury found Mr. Shannon guilty of possession of a firearm by a felon and possession of cocaine. He was found not guilty of possession of methamphetamine, possession with intent to distribute methamphetamine, possession with intent to distribute cocaine, using or carrying a firearm during and in relation to a drug trafficking offense, and possession of a firearm in furtherance of a drug trafficking offense. The district court sentenced him to 51 months for possession of a firearm by a felon and 12 months for possession of cocaine, to run concurrently. Mr. Shannon timely appealed.

## DISCUSSION

### I.    Sufficiency of the Evidence

Mr. Shannon first contends the district court erred in denying his motion for acquittal on the basis of insufficient evidence. We disagree.

### A. Standard of Review

We review de novo a claim of insufficient evidence. *See United States v. Benford*, 875 F.3d 1007, 1014 (10th Cir. 2017). "Evidence is sufficient to support a

4

conviction if, viewing the evidence and the reasonable inferences therefrom in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* We "consider both direct and circumstantial evidence, as well as the reasonable inferences to be drawn from that evidence." *United States v. Brooks*, 438 F.3d 1231, 1236 (10th Cir. 2006) (internal quotation marks omitted). We "defer to the jury's resolution" and do not "weigh conflicting evidence" or "consider the credibility of witnesses." *Id.* The evidence "need not conclusively exclude every other reasonable hypothesis" or "negate all possibilities except guilt." *United States v. Erickson*, 561 F.3d 1150, 1158-59 (10th Cir. 2009) (internal quotation marks omitted). Rather, "we must simply determine whether the evidence, if believed, would establish each element of the crime." *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004) (brackets and internal quotation marks omitted).

### B. Possession of a Firearm by a Felon

"To support a conviction under 18 U.S.C. § 922(g)(1), the government had the burden to prove beyond a reasonable doubt that (1) [Mr. Shannon] was previously convicted of a felony; (2) he thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce." *Benford*, 875 F.3d at 1015. Only the second element is at issue here.

Possession "may be either actual or constructive." *Id.* "Actual possession exists when a person has direct physical control over a thing." *Id.* at 1020 (internal quotation marks omitted); *see also United States v. Samora*, __ F.3d __, 2020 WL

5

1697486, at *1 (10th Cir. Apr. 8, 2020) (noting for "actual possession, the defendant must have held the firearm for a mere second or two during the time specified in the indictment" (internal quotation marks omitted)). Constructive possession, on the other hand, exists "when a person, though lacking such physical custody, still has the power and intent to exercise control over the object." *Benford*, 875 F.3d at 1020 (emphasis and internal quotation marks omitted).

"[W]hen, as here, a defendant jointly occupies the premises on which the firearm is found, we have required the government to show a nexus between the defendant and the firearm—specifically, that the defendant had knowledge of and access to the firearm." *Id.* at 1015.[2] "[P]ossession of a weapon by a prohibited person may be proved by circumstantial as well as direct evidence." *United States v. Morales*, 758 F.3d 1232, 1235 (10th Cir. 2014) (brackets omitted). "While caution must be taken that the conviction not be obtained by piling inference on inference, an inference of constructive possession is reasonable if the conclusion flows from logical and probabilistic reasoning." *United States v. Lazcano-Villalobos*, 175 F.3d 838, 843 (10th Cir. 1999) (internal quotation marks omitted).

The government contends there was sufficient evidence of both actual and constructive possession. Mr. Shannon insists his "possession of the firearm was, at

---

[2] Although Mr. Shannon was alone in the vehicle for a few minutes after the passenger departed, we assume, without deciding, that a joint-occupancy analysis applies. *See United States v. Turner*, 553 F.3d 1337, 1348 (10th Cir. 2009) (approving joint occupancy instruction where the defendant and another person "briefly co-occupied" the vehicle).

best, constructive." Aplt. Opening Br. at 18. We need not address actual possession because there was "sufficient evidence for a rational jury to find [Mr. Shannon] constructively possessed the firearm at issue." *Samora*, __ F.3d __, 2020 WL 1697486, at *2 & n.2.

Mr. Shannon correctly notes his proximity to the firearm is not, by itself, sufficient to establish constructive possession. But close proximity is probative "when considered with the rest of the evidence presented." *United States v. Bowen*, 437 F.3d 1009, 1016 (10th Cir. 2006). Such other evidence includes the fact that it was obvious to officers looking through the heavily tinted windows that there was "something covered up on the back seat," R. Vol. 4 at 102 (internal quotation marks omitted). And while he was alone in the vehicle for several minutes, officers observed Mr. Shannon "moving around the passenger compartment." *Id.* at 98.

Mr. Shannon attempts to distance himself from the Thunderbird by stating it "did not belong to [him] and there was no evidence he had occupied it for any length of time prior to his arrest." Aplt. Opening Br. at 21. The vehicle was registered to a different individual, but that person was nowhere to be found. And documents identifying Mr. Shannon, not the registered owner, were found throughout the vehicle, showing he "had access to all areas of [it]." *United States v. Gambino-Zavala*, 539 F.3d 1221, 1229 (10th Cir. 2008). Such documents—found in the center console, the passenger compartment, and the trunk—included Mr. Shannon's state identification card, an order cancelling his driver license, his social security card, an apartment rent reminder in his name, and an arrest warrant

7

referencing his nickname. Although Mr. Shannon states that he "did not have the keys to the Thunderbird with him when he exited the vehicle," Aplt. Opening Br. at 21-22, he does not point to any evidence to support this statement. And he fails to offer an explanation for the evidence introduced at trial that shows he had the key to the Thunderbird on his person when he was arrested while walking back in its direction.

The nature and location of the items found in the Thunderbird, the fact that Mr. Shannon was seen in the driver's seat, and the fact that he was found with the key to the vehicle supports a finding of knowledge of the vehicle's contents, including the firearm. *See United States v. King*, 632 F.3d 646, 651 (10th Cir. 2011) (noting "control over the premises where the firearm is found can be a strong indicator of constructive possession").

Additionally, the text messages on his phone show knowledge of the firearm. Specifically, a reasonable inference is that the AR-15 in the Thunderbird was "the AR" that Ray Big said he "might need" in his text message to Mr. Shannon, R. Vol. 4 at 162. *See Benford*, 875 F.3d at 1016 (noting "a jury could rely in part on [the defendant's] text messages from three months earlier indicating he had guns to trade" to find that "[he] knew of and had access to the . . . pistol"). Mr. Shannon, however, contends the text messages are too ambiguous to show possession of that particular AR-15, citing *United States v. Hooks*, 551 F.3d 1205 (10th Cir. 2009). But the facts in *Hooks* are distinguishable from the facts here.

8

In *Hooks*, the police, following a chase, executed a felony traffic stop of a pickup truck with four passengers—Mr. Hooks, the driver; his co-defendant, Mr. Ferrell, the front-seat passenger; and two additional passengers hiding in the backseat. 551 F.3d at 1208. No firearms were found in the pickup, but the police subsequently searched the roadside and found a 9mm Uzi in a ditch adjacent to the edge of the road. *Id*. at 1209. Mr. Ferrell was found guilty of possessing the Uzi. *Id*. at 1212. On appeal, we agreed with Mr. Ferrell that his conviction could not stand because the government had failed to establish a nexus between him and the Uzi. *Id*. at 1213. We explained that "the government's evidence consist[ed] of no more than Mr. Ferrell's presence inside the pickup occupied by four persons, his recorded statements to Mr. Hooks [,which did not evince knowledge of the Uzi's presence in the vehicle], and the location where the Uzi was found by the side of the road." *Id*.

Here, we do not have a weapon found on the roadside—it was on the backseat of a vehicle that Mr. Shannon controlled. The text message from Ray Big asking to borrow "the AR" two days before the AR-15 was found in the vehicle provides additional evidence of a nexus between Mr. Shannon and the AR-15. This evidence is far less ambiguous or attenuated than the evidence in *Hooks*.

Finally, sufficient evidence showed that Mr. Shannon not only had the ability "to control" the firearm, but also the "intent to exercise that control," *United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016). The AR-15 was loaded, with its safety switch off, indicating an intent to use the weapon if needed, such as to protect his

9

drugs, his cash, or his person. The text messages on Mr. Shannon's phone from Ray Big saying he "might need the AR now" also indicate an intent to exercise control, such as by making the firearm readily available to associates when requested. Intent is most often established through circumstantial evidence, *see United States v. Camick*, 796 F.3d 1206, 1220 (10th Cir. 2015), and here, there was circumstantial evidence of Mr. Shannon's intent to exercise control of the firearm.

The jury could reasonably conclude Mr. Shannon had constructive possession of the AR-15. Accordingly, the court did not err in declining to dismiss this charge.

### C. Possession of Cocaine

Mr. Shannon next challenges his conviction of simple possession of cocaine. 21 U.S.C. § 844(a) provides, in pertinent part, that it is "unlawful for any person knowingly or intentionally to possess a controlled substance." The government does not contend Mr. Shannon actually possessed cocaine, and he argues there was insufficient evidence of constructive possession.

Mr. Shannon contends that the "jury was quite puzzled by the question whether [he] possessed methamphetamine, as demonstrated by its questions to the District Court" expressing confusion over which substance was methamphetamine and where it was found. Aplt. Opening Br. at 28. Mr. Shannon further contends that the jury "solved this dilemma by acquitting Mr. Shannon of possession of methamphetamine." *Id*. And he argues that "[t]he problem now is that with regard to all the drugs introduced at trial," the government's forensics expert "gave an entirely muddled narrative of what tested positive for what," *id*. But the expert consistently

10

testified that both the cigarette pack in the center console of the Thunderbird and the cigarette pack found on the ground in the parking lot contained cocaine. And the jury's decision to acquit Mr. Shannon for possession of methamphetamine does not cast doubt on the jury's decision to find him guilty of possession of cocaine.

Ultimately, even if we consider only the cocaine found in the Thunderbird's center console, as discussed above, there were sufficient facts for the jury to conclude that Mr. Shannon controlled the vehicle in which the drugs were located. And although Mr. Shannon argues "the jury apparently rejected the notion that [he] 'possessed' anything in the Thunderbird," *id.* at 29, that plainly is incorrect, since the jury found he possessed the AR-15 in the backseat. Moreover, Mr. Shannon was in close proximity to the drugs and was seen "reach[ing] toward the center console" while in the driver's seat and alone in the vehicle, R. Vol. 4 at 98, 199. *See Bowen*, 437 F.3d at 1016 (noting "furtive movements" where drugs are found can tend to show constructive possession). The empty cigarette pack on the driver's side floorboard was the same brand as the pack containing cocaine found in the center console as well as the pack containing cocaine and methamphetamine found on the ground where he was arrested. Additionally, clear baggies and two digital scales were found on the driver's side floorboard and the door pocket, bolstering the jury's finding that he possessed the drugs found in the vehicle.

The jury could reasonably conclude Mr. Shannon constructively possessed cocaine. Therefore, the district court did not err in declining to dismiss this charge.

11

## II.     Jury Instructions

Mr. Shannon next contends the district court committed plain error because its jury instruction on possession of a firearm by a felon "fail[ed] to address entirely that in order to exercise constructive possession of the firearm, Mr. Shannon must intend to exercise dominion over the firearm."  Aplt. Opening Br. at 30.  We disagree.

### A. Standard of Review

Mr. Shannon concedes that he did not object to the jury instructions at trial and that our review, therefore, is only for plain error.[3]  *See United States v. Gorrell*, 922 F.3d 1117, 1122 (10th Cir. 2019).  "To obtain relief under this standard, [Mr. Shannon] must show that the district court made (1) an error, (2) that was plain or obvious, (3) that affected his substantial rights, and (4) also seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.*

"In reviewing jury instructions for legal error, we view them as a whole to determine whether the jury may have been misled, upholding the judgment in the absence of substantial doubt that the jury was fairly guided."  *United States v. Banks*, 761 F.3d 1163, 1185 (10th Cir. 2014) (internal quotation marks omitted).  An error is plain if it is "obvious and clear," which typically requires that it be "contrary to . . .

---

[3] The government argues Mr. Shannon waived review because his "counsel stipulated to most of the offense instructions."  Aplee. Br. at 17.  "The invited-error doctrine prevents a party who induces an erroneous ruling from being able to have it set aside on appeal."  *United States v. Deberry*, 430 F.3d 1294, 1302 (10th Cir. 2005) (internal quotation marks omitted).  This includes alleged instructional error where the defendant "meaningfully participated in crafting the jury instruction actually given."  *United States v. Jereb*, 882 F.3d 1325, 1339 (10th Cir. 2018).  But we need not resolve this case on invited error because Mr. Shannon has not shown plain error.

the current law of the Supreme Court or the Tenth Circuit." *United States v. Wardell*, 591 F.3d 1279, 1298 (10th Cir. 2009). And for the third prong of plain-error review, "we ask only whether there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Bacon*, 950 F.3d 1286, 1296 (10th Cir. 2020) (internal quotation marks omitted).

### B. Intent for Constructive Possession

In its instruction on possession of a firearm by a felon, the district court correctly recited the elements, including that "Mr. Shannon knowingly possessed a firearm," R. Vol. 1 at 272. But while the instruction defined "firearm" and "knowingly," *id.* at 272-73, it did not define "possessed." Mr. Shannon contends this was plain error based on our decision in *Little*.

In *Little*, "[t]he district court used the unmodified Tenth Circuit Criminal Pattern Jury Instruction § 1.31 (2011), which provides that constructive possession exists when a person not in actual possession 'knowingly has the power at a given time to exercise dominion or control over an object.'" 829 F.3d at 1181. We held that due to a recent Supreme Court decision, constructive possession now "requires both power to control an object and intent to exercise that control." *Id.* at 1182 (citing *Henderson v. United States*, 135 S. Ct. 1780, 1784 (2015)). We then considered whether the jury instruction constituted reversible error. *Id.* at 1182-83. Although we found the error harmless in *Little*, *id.* at 1183-84, we have relied on *Little* to find plain error in several cases involving identical instructional definitions of constructive possession. *See Samora*, __ F.3d __, 2020 WL 1697486, at *4-6;

13

*United States v. Giannukos*, 908 F.3d 649, 653-58 (10th Cir. 2018); *Benford*, 875

F.3d at 1016-21; *United States v. Simpson*, 845 F.3d 1039, 1059-63 (10th Cir. 2017).

Mr. Shannon contends that his "case is similar to what occurred in *Little*,"

Aplt. Opening Br. at 31, and that "the mistaken jury instruction was clearly plain

error," *id.* at 32. But whereas *Little* and its progeny addressed a flawed definition of

constructive possession, the district court's instruction on possession of a firearm by

a convicted felon did not define constructive possession at all.

In *United States v. Robinson*, 435 F.3d 1244, 1249 (10th Cir. 2006), this court

rejected a claim of instructional error where the defendant did "not contend that a

charging definition incorrectly stated the law" but, instead, alleged error on the basis

"that *no* definition was given for 'in furtherance of'" with respect to possessing a

firearm in furtherance of a drug trafficking crime. We recognized "[a] significant

line of cases holds that it is not error—plain or otherwise—to fail to define a

statutory term or phrase that carries its natural meaning." *Id.*[4] We noted other courts

have applied this principle to common legal terms, including "possession." *Id.* at

---

[4] Legal terms to which we have applied this principle include "sex act," *United States v. Lacy*, 904 F.3d 889, 893 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 2774 (2019); "used," *United States v. Thomas*, 749 F.3d 1302, 1313 (10th Cir. 2014); "guarantee," *United States v. Schuler*, 458 F.3d 1148, 1156 (10th Cir. 2006); "attempt" and "transaction," *United States v. DeSantiago-Flores*, 107 F.3d 1472, 1480 (10th Cir.), *overruled in part on other grounds by United States v. Holland*, 116 F.3d 1353 (10th Cir. 1997); "monetary transaction" and "financial institution," *United States v. Lovett*, 964 F.2d 1029, 1039 (10th Cir. 1992); "wanton and reckless disregard for human life," *United States v. Bryant*, 892 F.2d 1466, 1468 (10th Cir. 1989); and "inference," *United States v. Brown*, 541 F.2d 858, 861 (10th Cir. 1976).

1250 (internal quotation marks omitted). After *Robinson*, we specifically declined to find plain error when a court did not provide an instruction defining "constructive possession." *United States v. Knight*, 659 F.3d 1285, 1292-93 (10th Cir. 2011).[5]

It is unlikely Mr. Shannon's jury was misled on the meaning of constructive possession. Although the court did not separately instruct on constructive possession or define it as part of its instruction on possession of a firearm by a felon, we review instructions "as a whole." *Banks*, 761 F.3d at 1185 (internal quotation marks omitted). Here, the court included a correct definition of constructive possession in its instructions on two other offenses. *See* R. Vol. 1 at 275 (defining constructive possession in the instruction on possession with intent to distribute cocaine as "when a person does not have direct physical control over something, but can knowingly control *and intends* to control it" (emphasis added)); *id.* at 278 (including the same definition in the instruction on possession with intent to distribute methamphetamine). Moreover, the government specifically acknowledged in closing arguments that constructive possession requires that "you have the opportunity and ability to exercise dominion and control over a thing and you have *the intent* to do so." R. Vol. 4 at 354 (emphasis added).

Regardless, Mr. Shannon cites no authority requiring a court to give, in the absence of a request, a definition of constructive possession, either in an offense

---

[5] *Knight* employed a pre-*Little* definition of constructive possession, but this does not impact the decision's relevance to the absence of an instructional definition.

15

instruction or as a stand-alone instruction.[6] *See Knight*, 659 F.3d at 1293 (finding no plain error where the defendant did not "identify any case—much less a Tenth Circuit or Supreme Court decision—holding that failure to provide a constructive possession instruction is erroneous"). Accordingly, he has failed to demonstrate plain error.

## CONCLUSION

The district court's judgment is affirmed.

Entered for the Court


Jerome A. Holmes
Circuit Judge

---

[6] The pattern instruction at issue in *Little* now defines constructive possession as when a person "knowingly has the power *and intent* at a given time to exercise dominion or control over an object, either directly or through another person or persons." 10th Cir. Crim. Pattern Jury Instructions No. 1.31 (2018) (emphasis added). But Mr. Shannon did not request this instruction, and the court did not give it.

16