**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 22, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BYRON CORDELL THOMAS,

    Defendant - Appellant.

No. 24-5131
(D.C. No. 4:23-CR-00041-JFH-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **MORITZ**, and **CARSON**, Circuit Judges.
_____

A federal jury convicted Byron Cordell Thomas of two counts of sex trafficking and one count of possessing a gun as a convicted felon. This appeal requires us to decide whether those convictions were supported by sufficient evidence.[1] We conclude they were.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The jury convicted Mr. Thomas of other crimes too, but he challenges only the three convictions we have mentioned.

**1. We view the evidence in the light most favorable to the government.**

The district court denied Mr. Thomas's motion for judgment of acquittal, concluding that the evidence could support guilty verdicts. We review that conclusion de novo. *United States v. Spradley*, 146 F.4th 949, 963 (10th Cir. 2025). But our review gives deference to the jury's verdicts: We view the evidence (and any reasonable inferences it supports) in the light most favorable to the government. *See United States v. Thompson*, 133 F.4th 1094, 1100 (10th Cir.), *cert. denied*, No. 25-5407, 2025 WL 2824514 (U.S. Oct. 6, 2025). And we will not resolve conflicts in the evidence or evaluate witness credibility—those tasks belong to the jury. *See id.* In short, we will reverse only if no rational juror could have found the government proved the elements of a crime beyond a reasonable doubt. *See id.*

**2. Sufficient evidence supported the sex-trafficking convictions.**

The relevant portions of the sex-trafficking statute make it a crime to recruit, entice, or solicit a person knowing, or "in reckless disregard of the fact, that means of force, threats of force, fraud, [or] coercion . . . will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a). The statute defines "coercion" to include "threats of serious harm to or physical restraint against any person," or "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person." § 1591(e)(2). And "serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable

2

person" with the victim's background and in the victim's circumstances "to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." § 1591(e)(5).

At the core of Mr. Thomas's sufficiency-of-the-evidence argument lies a claim about what the sex-trafficking statute required the government to prove. Mr. Thomas says the statute required proof "that force, fraud, or coercion was actually '*used to cause*' an individual *to engage in a commercial sex act*, thereby depriving that individual of valid consent to the sex act." Aplt. Opening Br. at 1 (quoting § 1591(a)) (boldface omitted).

This interpretation is incorrect. The relevant portions of the statute require proof of an act (enticing, recruiting, or soliciting a person, for example) and a mental state—knowing or recklessly disregarding that force, threats of force, fraud, or coercion "will be used to cause the person to engage in a commercial sex act." § 1591(a). The mental-state requirement targets "the defendant's plan for the victim at the time he recruits her." *United States v. Wearing*, 865 F.3d 553, 556 (7th Cir. 2017). And so "the crime is complete when the defendant recruits, entices, harbors, etc., the victim with knowledge that the prohibited means will be used in the future to cause them to engage in commercial sex acts." *United States v. Maynes*, 880 F.3d 110, 114 (4th Cir. 2018). The statute does not require proof that a commercial sex act actually occurred. *Id.*; *see also Wearing*, 865 F.3d at 556 (collecting cases).

With the statute's requirements in focus, we turn to the evidence supporting Mr. Thomas's sex-trafficking convictions. His indictment alleged that he trafficked

3

two women, C.T. and M.N., by force, fraud, or coercion.  The jury convicted him of one count for each woman.

The evidence allowed a rational juror to find that Mr. Thomas recruited C.T. and M.N. knowing that he would use coercion to cause them to engage in prostitution.  C.T. and M.N. both testified that Mr. Thomas encouraged them to prostitute themselves when they were struggling financially.  Despite their work in Mr. Thomas's operation, they had no money of their own; they depended on Mr. Thomas to pay for anything they wanted or needed.  That was no accident.  An expert witness opined that Mr. Thomas made statements revealing his intent to manipulate "women to such a degree that they look to [him] for everything." Suppl. R. vol. 1 at 501.  C.T. testified that although she could have quit Mr. Thomas's operation, she would have been left with no money.  And M.N. testified that she had been concerned that if Mr. Thomas "wasn't there," then "the money might not be there." *Id.* at 243.  This evidence permitted a finding that Mr. Thomas intentionally caused the victims to fear serious financial harm if they stopped prostituting themselves.

A rational juror also could have found that Mr. Thomas recruited the victims knowing that he would use force to cause them to engage in prostitution.  Both victims testified that Mr. Thomas physically assaulted them.  C.T. said that Mr. Thomas "put his hands on" her whenever he overheard her talking about leaving his operation. *Id.* at 137.  And another witness testified that M.N. feared that Mr. Thomas would hurt her "if she tried to leave." *Id.* at 168.  This evidence

4

permitted a finding that Mr. Thomas intended to use physical force to prevent the victims from leaving his operation.

Yet Mr. Thomas insists that his assaults against the victims were acts of "domestic violence" unrelated to the prostitution operation. Aplt. Reply Br. at 4. Perhaps that is one permissible view of the evidence. But so is the view that he used violence to keep the victims from leaving the operation. And our role is not to choose between competing views of the evidence. *See Thompson*, 133 F.4th at 1100.

### 3. Sufficient evidence supported the felon-in-possession conviction.

Mr. Thomas contends that his felon-in-possession conviction cannot stand because the government failed to prove he possessed a gun.

A felon-in-possession conviction can be supported by either actual possession or constructive possession. *United States v. Morales*, 758 F.3d 1232, 1235 (10th Cir. 2014). "Actual possession exists when a person has direct physical control over a firearm at a given time." *Id.* (internal quotation marks omitted).

The evidence allowed a rational juror to find that Mr. Thomas actually possessed a gun immediately before police arrested him. When officers approached Mr. Thomas in a hotel parking lot, he ran. In the ensuing chase, Mr. Thomas "ducked behind" an exterior staircase, and an officer "heard a clank" that sounded like a firearm hitting the ground. Suppl. R. vol. 1 at 93. After police captured Mr. Thomas, they found a handgun at the base of the stairs. From that evidence, a rational juror could have found that Mr. Thomas dropped the gun.

5

Gaps in the government's evidence did not require an acquittal. Mr. Thomas highlights that no officer claimed to see him holding the gun, and that the government presented no fingerprint or DNA evidence linking him to the gun. But possession, like any fact, can be proved through circumstantial evidence. *Morales*, 758 F.3d at 1235. Sufficient circumstantial evidence allowed the jury to find Mr. Thomas actually possessed the gun "immediately before discarding it during the chase." *Id.* at 1236 (upholding a felon-in-possession conviction after officers found a gun on the path of the defendant's flight).

\*　　\*　　\*

The district court's judgment is affirmed.

Entered for the Court

Carolyn B. McHugh
Circuit Judge